# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date: August 8, 2016**

**NO. S-1-SC-34733**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANTHONY SAMORA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Steven H. Johnston, Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**CHÁVEZ, Justice.**

{1}     Defendant Anthony Samora was accused of luring a sixteen-year-old male into his truck by deception, driving him to a secluded location in Albuquerque, and then forcibly penetrating him in the anus.  A jury convicted Defendant of second-degree criminal sexual penetration in the commission of a felony (CSP-felony), contrary to NMSA 1978, Section 30-9-11(E)(5) (2007, amended 2009), and first-degree kidnapping, contrary to NMSA 1978, Section 30-4-1(A)(4) (2003).  Due to sentencing enhancements, Defendant was sentenced to life imprisonment with the possibility of parole after thirty years for his CSP-felony conviction plus a consecutive eighteen-year sentence for his kidnapping conviction.  In this direct appeal, Defendant brings a variety of challenges to both convictions,  including a challenge to the district court for omitting that the sexual act must have been non-consensual when instructing the jury on CSP-felony.

{2}     Because we conclude that it was fundamental error to omit the phrase "without consent" from the jury instructions relevant to CSP-felony, we must reverse Defendant's CSP conviction.  The same fundamental error also infected the jury's findings with respect to Defendant's intent to inflict a sexual offense against the alleged victim, and we must therefore also reverse Defendant's kidnapping

conviction. Accordingly, we remand this case to the district court, where Defendant may be retried on both charges.

## I.    BACKGROUND

{3}    J.Z.[1] was at a bus stop in downtown Albuquerque "bugging people for money" so that he could catch a bus home. Defendant approached him, stated that he knew J.Z.'s family, and offered to give J.Z. a ride home. J.Z. got into Defendant's pickup truck, and Defendant started driving.

{4}    J.Z. testified that he soon noticed that Defendant was not driving J.Z. toward his house. J.Z. told Defendant he was driving the wrong way, and Defendant did not respond. Defendant eventually stopped the truck in a remote location under a highway underpass. Defendant then punched J.Z. in the head, and J.Z. became "dizzy." Defendant pulled down J.Z.'s pants, maneuvered him into a receptive position, got on top of J.Z., and penetrated J.Z.'s anus with his penis. J.Z. further

---

[1]Although some mention of the alleged victim's name was inevitable at trial, we do not refer to him by name here because "the constitution and laws of New Mexico require that we respect 'the victim's dignity and privacy throughout the criminal justice process,' " *State v. Allen*, 2000-NMSC-002, ¶ 2 n.1, 128 N.M. 482, 994 P.2d 728 (quoting N.M. Const. art. II, § 24(A)(1)), and because the alleged victim was a child under NMSA 1978, Section 32A-1-4(B) (2005, amended 2016), since state law affords some degree of confidentiality in child abuse and neglect cases. *See generally* NMSA 1978, § 32A-4-33 (2005, amended 2016); *see also Allen*, 2000-NMSC-002, ¶ 2 n.1.

testified that he tried to escape by opening the passenger-side door of Defendant's truck, but the door would not open. After a few minutes Defendant ejaculated and said, "Now I can take you home." Defendant dropped off J.Z. on the west side of Albuquerque at a gas station near a Walmart. J.Z. testified that he was afraid to call the police because he did not want to be arrested for a probation violation. He also testified that he fought back throughout the encounter but that Defendant threw him around and overpowered him. J.Z. was sixteen years old at the time of the alleged crime.

{5}     Two days later, J.Z. was arrested for absconding from juvenile probation. In jail, J.Z. told a counselor that he had been sexually assaulted. J.Z. went through a sexual assault nurse examination (SANE exam) four days after the alleged attack. During the SANE exam, a nurse took swabs from J.Z.'s anus, penis, and mouth. The nurse found no evidence of any injuries on his body, and no DNA from Defendant was found on the swabs.

{6}     After his release from custody about thirty days later, J.Z. told Jennifer Brown, his big sister under the Big Brothers Big Sisters program, what had happened to him and described his attacker, including the fact that the attacker wore a GPS monitor on his belt. Ms. Brown located a photograph of Defendant and Defendant's address on

a website, and from that website photograph J.Z. recognized Defendant as his attacker. J.Z. drove to the address listed on the website, and J.Z. identified Defendant's truck as the truck in which he was attacked. State employees later matched the locations and sequence of Defendant's GPS coordinates to those described in J.Z.'s story.

{7} Defendant was indicted on two counts of criminal sexual penetration in the second degree "by the use of force or coercion on a child thirteen to eighteen years of age" (CSP-force/coercion). Section 30-9-11(E)(1). Each count was alternatively charged as CSP-felony. Section 30-9-11(E)(5). Defendant was also charged with criminal sexual contact of a minor in the fourth degree (CSC), contrary to NMSA 1978, Section 30-9-13(D)(1) (2003), and kidnapping, contrary to Section 30-4-1(A)(4). With respect to an allegation that Defendant forced J.Z. to engage in fellatio or touched J.Z.'s penis without his consent, the jury unanimously found Defendant not guilty of CSP-felony or CSP-force/coercion and not guilty of the charge of CSC. The jury also unanimously found Defendant guilty of CSP-felony with respect to the allegation of anal penetration and guilty of kidnapping. The jury hung on whether Defendant was guilty of CSP-force/coercion with respect to the allegation of anal penetration.

{8} At a separate sentencing proceeding, *see* NMSA 1978, § 31-18-26 (1996), the jury unanimously found by a preponderance of the evidence that Defendant had been convicted of two violent sexual offenses pursuant to NMSA 1978, Section 31-18-25(F) (1997, amended 2015), and was accordingly subject to a mandatory enhancement by a sentence of life imprisonment. Defendant was sentenced to nine years imprisonment enhanced by a term of life imprisonment with the possibility of parole in thirty years for the second-degree CSP-felony conviction and to eighteen years imprisonment for first-degree kidnapping, to be served consecutively.

## II.   DISCUSSION

### A.   Defendant's Right to a Speedy Trial Was Not Violated

{9} The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." *See also* N.M. Const. art. II, § 14 ("[T]he accused shall have the right to . . . a speedy . . . trial."). Preventing prejudice to the accused is at the heart of the speedy trial right, which also emanates from "the concomitant 'societal interest in bringing an accused to trial.' " *State v. Serros*, 2016-NMSC-008, ¶ 4, 366 P.3d 1121 (quoting *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387). To determine whether the accused has been deprived of his speedy trial right, this Court follows the four-

factor test established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), and considers "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *Garza*, 2009-NMSC-038, ¶ 5 (citing *Barker*, 407 U.S. at 530). The Court "weigh[s] these factors according to the unique circumstances of each case in light of 'the State and the defendant's conduct and the harm to the defendant from the delay.' " *Id.* ¶ 5 (quoting *Garza*, 2009-NMSC-038, ¶ 13). "In reviewing a district court's ruling on a speedy trial violation claim, we defer to the court's findings of fact, and we weigh and balance the *Barker* factors de novo." *Id.* ¶ 20.

**1.      Length of the delay**

{10}      The Court must first determine whether the length of the delay is presumptively prejudicial. "The first factor, the length of delay, has a dual function: it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being presumptively prejudicial, and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *Serros*, 2016-NMSC-008, ¶ 22 (internal quotation marks and citation omitted). Defendant was arrested and indicted on September 8, 2008, and his trial began on November 12,

6

2013. The State therefore failed to bring the case to trial for more than five years. This delay is presumptively prejudicial, regardless of the complexity of the case. *See Serros*, 2016-NMSC-008, ¶¶ 21-23 (determining that a delay of more than four years was "presumptively prejudicial irrespective of the case's complexity"). This sixty-two-month delay is extraordinary and weighs heavily against the State. Because the delay is presumptively prejudicial, we must consider the remaining *Barker* factors. *Serros*, 2016-NMSC-008, ¶ 22.

**2.      Reasons for the delay**

{11}      The Court must evaluate "the reason the government assigns to justify the delay," which "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* ¶ 29 (internal quotation marks and citation omitted). If the State deliberately attempts to delay the trial to hamper the defense, the delay weighs heavily against the State. *Id.* Negligent or administrative delay must be considered because "the ultimate responsibility for such circumstances must rest with the government," although such delay is not weighed as heavily against the State. *Id.* (internal quotation marks and citation omitted). However, "[a]s the length of delay increases, negligent or administrative delay weighs more heavily against the State." *Id.* Finally, " 'appropriate delay,' justified for 'a valid reason, such as a missing

7

witness,' is neutral and does not weigh against the State." *Id.* (quoting *Garza*, 2009-NMSC-038, ¶ 27). Delay caused by a defendant weighs against that defendant. *See Vermont v. Brillon*, 556 U.S. 81, 90, 94 (2009) (holding that the defendant's "deliberate attempt to disrupt proceedings" weighed heavily against the defendant).

{12} In this case, the pretrial delay can be grouped into three time periods: (1) from September 8, 2008 until April 2010; (2) from April 2010 until September 2011; and (3) from September 2011 until trial in November 2013.

{13} During the first time period, the parties individually or jointly filed at least a dozen motions for continuance stating a variety of reasons, including to negotiate a plea deal that potentially included other charges against Defendant, to prepare for trial, and to complete discovery. Defendant either stipulated to each of the State's motions or did not oppose them. For the first time on appeal, Defendant asserts that he stipulated to or jointly filed the numerous motions for continuance which stated as grounds the need to continue plea discussions because of the apparent policy of the Second Judicial District Attorney's Office that only allowed plea negotiations prior to the victim being interviewed. This is the same policy that we previously disfavored in *Serros* because "it is well settled that the possibility of a plea agreement does not relieve the State of its duty to pursue a timely disposition of the case." 2016-

8

NMSC-008, ¶¶ 69, 71-72 (citing *State v. Maddox*, 2008-NMSC-062, ¶ 26, 145 N.M. 242, 195 P.3d 1254 ("The State must affirmatively seek to move the case to trial, even while plea negotiations are pending.")). Here, the plea negotiations were complicated and delayed by Defendant's admission to a parole violation on June 2, 2009, the filing of additional criminal sexual penetration charges against Defendant in September 2009, and the parties' effort to reach a plea deal with respect to all charges pending against Defendant and not just the charges in this case. There is no evidence that the State deliberately delayed the case during this time, and therefore these nineteen months from September 8, 2008 until April 2010 weigh only slightly against the State.

{14} During the second time period, Defendant concedes that he was responsible for delaying the trial from April 2010 until February 2011. However, Defendant was also responsible for the delay from March 2011 until April 2011 because his attorney missed a hearing and filed a motion for a continuance due to a scheduling conflict in another case. On May 2, 2011, Defendant filed a request for judicial recusal. This motion was denied, and the judge found that the motion was filed for the purpose of delaying the trial. On May 6, 2011, Defendant petitioned this Court to issue an extraordinary writ reversing the district judge. We denied the writ on May 27, 2011.

The time relating to Defendant's petition for an extraordinary writ cannot be weighed against the State, and in any event, Defendant accepted responsibility for this delay. The district court set the trial for September 6, 2011; therefore, we hold that Defendant is solely responsible for the seventeen-month delay from April 2010 to September 2011.

{15} The third time period, the twenty-six-month delay from September 2011 until November 2013, involved the district court's consideration of numerous motions filed by both parties and an appeal to this Court. The State appealed an order which excluded a statement Defendant made to his counselor, Tewana Bell, which Bell later relayed to police officers. In that statement, Defendant told Bell that he had sex with someone whose description was consistent with the physical characteristics of the alleged victim. The district court entered its order on December 15, 2011 excluding Defendant's statement because of the psychotherapist-patient privilege. *See* Rule 11-504 NMRA.

{16} The State then filed a notice of appeal with the district court on December 16, 2011. The State appealed to the Court of Appeals, which transferred the appeal to this Court pursuant to *State v. Smallwood*, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821, because Defendant, if found guilty, might be sentenced to life in prison.

For speedy trial purposes in weighing the responsibility assigned to a party for delay caused by an interlocutory appeal, courts may consider several factors, including "the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). Applying the *Loud Hawk* analysis, we conclude that the delay from the filing of the appeal until our disposition should weigh neutrally because there were no unusual delays. First, the State certified that the appeal was not taken for the purpose of delay and that the evidence would have been substantial proof of a material fact. Second, we are persuaded that the evidence was important because, if admitted, it served as evidence that Defendant admitted to having sex with someone who had the specific characteristics of the alleged victim. Third, it illustrated the seriousness of a crime that Defendant could be subjected to a sentence of life in prison if he were found guilty. Ultimately, this Court issued a dispositional order affirming the district court. *State v. Samora*, No. 33,394, dispositional order of affirmance ¶ 13 (N.M. Sup. Ct. Aug. 29, 2013).

{17} Further, the three and one-half months of motions from September 6, 2011 until December 16, 2011 and the two and one-half months between our dispositional order and the actual trial on November 12, 2013 are administrative delays which weigh, if

11

at all, only slightly against the State.

{18} To summarize how we have weighed the reasons for the delay, twenty-five months weigh slightly against the State, seventeen months weigh against Defendant, and twenty months weigh neutrally. Considered together, the parties bear a similar responsibility for the delays, and this factor weighs only slightly against the State.

**C.      Assertion of the right**

{19} Under this factor, "[w]e accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *State v. Spearman*, 2012-NMSC-023, ¶ 31, 283 P.3d 272 (internal quotation marks and citation omitted). This inquiry is "closely related to the other *Barker* factors, because '[t]he strength of [the defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that [the defendant] experiences.' " *Garza*, 2009-NMSC-038, ¶ 31 (quoting *Barker*, 407 U.S. at 531) (alterations in original). Further, "[t]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to [a] speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Serros*, 2016-NMSC-008, ¶ 76 (second and

12

third alterations in original) (internal quotation marks and citation omitted).

{20} Defendant did not meaningfully assert his right, and therefore this factor does not support his speedy trial claim. Defendant made a pro forma assertion of his right on October 30, 2008, when the Public Defender Department entered its appearance on his behalf. The only other time he asserted the right was five years later in his October 25, 2013 motion to dismiss on speedy trial grounds. Considered alone, these two assertions would often be enough to weigh this factor slightly in favor of Defendant. *See, e.g.*, *Spearman*, 2012-NMSC-023, ¶¶ 32-33 (holding that the defendant's initial pro forma assertion along with a motion to dismiss based on a speedy trial violation weighed against the State). However, Defendant's assertions of the right were mitigated by his acquiescence to, and responsibility for, numerous delays. *See Garza*, 2009-NMSC-038, ¶ 34 (holding that the defendant's assertion of the right at the outset of the case along with a motion to dismiss based on a speedy trial violation weighed "slightly" in the defendant's favor where the assertion was not "mitigated . . . by any apparent acquiescence to the delay" by the defendant). In this case, Defendant either stipulated to or did not oppose the State's numerous motions for a continuance and was himself responsible for seventeen months of delay. Admittedly, it is difficult to determine whether Defendant only stipulated to the

13

continuances because of the district attorney's policy of not allowing plea deals after pretrial interviews with victims. In the petition for continuance filed on December 4, 2009, the State noted that "Defendant has chosen to forgo pretrial interviews of the victims until all written discovery is complete in both cases and to encourage a more favorable plea offer from the State." This may suggest that Defendant at least partially stipulated to the continuances because of the district attorney's policy. Further, in the petition for continuance filed on March 3, 2010, the State said that "[t]he parties are in the process of setting up pretrial interviews and preparing for trial in both cases should negotiations fall through . . . ." While this also may suggest that Defendant stipulated due to the policy, it is certainly not conclusive. If Defendant felt compelled to concur in the State's motions for a continuance because of the district attorney's policy, he could have stated so in a pleading to the district court so that the court could consider Defendant's position in assessing whether to grant or deny the motion. We are left to speculate whether Defendant truly felt compelled to stipulate to the continuances or whether his counsel simply decided it was not urgent to conduct pre-trial interviews because Defendant had access to J.Z.'s safehouse interview and could prepare his case on that basis. Defendant also demonstrated a lack of concern for his speedy trial right by delaying his trial for seventeen months.

14

Defendant's assertion of his speedy trial right only at the very beginning and very end of the pretrial period, his continued stipulations to the State's continuances, and his own significant contributions to the delay all show that his assertion of his speedy trial right was only an afterthought, and therefore this factor does not weigh in his favor.

**D.    Prejudice**

{21}    This Court must analyze three separate interests to determine whether Defendant suffered prejudice:  "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  *Garza*, 2009-NMSC-038, ¶ 35 (internal quotation marks and citation omitted).  Defendant must make a particularized showing of prejudice to demonstrate a violation of any of the three interests.  *Id.* ¶¶ 35, 37.  Because some oppression and anxiety are inevitably suffered by every defendant awaiting trial, "we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue."  *Id.* ¶ 35.

{22}    Here, Defendant has not asserted any particularized prejudice, such as identifying a witness whose memory may have been impaired by the delay.  *See Serros*, 2016-NMSC-008, ¶ 92 (holding that the inability to interview the very young

15

victim for four years prejudiced the defendant's ability to defend himself at trial). Nor has Defendant made a particularized showing that he suffered undue anxiety or oppressive pretrial incarceration. Furthermore, despite being incarcerated for more than five years while awaiting trial in this case, Defendant would have been incarcerated on the new CSP charge brought in September 2009, and other serious criminal charges were also brought against him a year into the pendency of this case. *Cf. id.* ¶¶ 88-91 (determining that the defendant being held in segregated protective custody on a single charge for over four years was extremely prejudicial). We hold that Defendant did not articulate any particularized prejudice that he suffered as a result of the lengthy delay in this case.

**5.      Balancing the factors**

{23}      To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the State. *Garza*, 2009-NMSC-038, ¶ 39. While the extraordinary length of the delay in this case weighs heavily against the State, the reasons for the delay weigh only slightly against the State, and Defendant did not meaningfully assert his speedy trial right. Therefore, we conclude that there was no speedy trial violation. Accordingly, we must examine Defendant's other claims.

16

**B.  The District Court Committed Fundamental Error by Failing to Instruct on the Consent Element of CSP-Felony**

{24}   The district court instructed the jury that to convict Defendant of CSP, CSC, or kidnapping, the jury must find beyond a reasonable doubt that he committed an act that was "unlawful." The jury instructions defined an unlawful act as follows: "For the act to have been unlawful it must have been done with the intent to arouse or gratify sexual desire or to intrude upon the bodily integrity or personal safety of [J.Z.]." This instruction reflected UJI 14-132 NMRA, except that it failed to include the bracketed phrase "without consent," which would have clarified that any sexual contact between J.Z. and Defendant had to be non-consensual for the jury to determine that Defendant's act was "unlawful."

{25}   If unlawfulness is at issue, then consent is an essential element of CSP-felony. CSP is defined, in relevant part, as "the unlawful and intentional causing of a person to engage in . . . anal intercourse . . . whether or not there is any emission." Section 30-9-11(A). The crime of CSP-felony requires that CSP be perpetrated "in the commission of any other felony." Section 30-9-11(E)(5). In *State v. Stevens*, we examined historical sources relevant to CSP-felony and determined that the Legislature "has never deviated from the common law approach of criminalizing only those sex acts that are perpetrated on persons without their consent, either as a matter

17

of fact or, in the case of children or other vulnerable victims, as a matter of law." 2014-NMSC-011, ¶ 27, 323 P.3d 901.  Accordingly, we concluded that the CSP-felony offense was intended to criminalize only "sexual acts perpetrated on persons *without their consent . . . .*" *Id.* ¶ 39 (emphasis added).  Therefore, to convict under this provision, the jury must determine that the underlying felony was "committed against the victim of, and . . . assist[ed] in the accomplishment of, sexual penetration perpetrated by force or coercion against a victim who, by age or other statutory factor," did not or could not give lawful consent. *Id.*

{26}   Here, the State provided the unlawfulness jury instruction to the district court and argued that "without consent" had been properly omitted because the issue of consent was "legally irrelevant" to the unlawfulness of CSP-felony in this case under *State v. Moore*, 2011-NMCA-089, 150 N.M. 512, 263 P.3d 289.  Yet, as the State acknowledges on appeal, *Moore* is inapplicable to this case.  *Moore* held that "the consent of a statutorily defined child is irrelevant to the unlawfulness element of CSP[-felony]," and it was therefore proper in *Moore* to omit the phrase "without consent" from the jury instructions when the alleged victim was fourteen years old and the defendant was forty-six years old. *Id.* ¶¶ 13-16.  As we noted in *Stevens*, 2014-NMSC-011, ¶¶ 20, 40, *Moore*'s reference to a " 'statutorily defined child' "

18

meant a child "below the age of consent." The age of consent, and whether the lack of consent is an aspect of the unlawfulness element of CSP, varies statutorily depending on the perpetrator's age, the child's age, and other factors as follows. Under Section 30-9-11(D), any sexual penetration of a child under thirteen years old is first-degree CSP because the child cannot legally consent to sex. Section 30-9-11(E)(1) punishes as second-degree CSP any sexual penetration of a child between the ages of thirteen and eighteen years old by the use of force or coercion. Under that form of CSP, if the prosecution has proved that force or coercion was used by the perpetrator, it has also necessarily proved that the act was non-consensual, and a separate finding of a lack of consent is not required. *See State v. Perea*, 2008-NMCA-147, ¶ 9, 145 N.M. 123, 194 P.3d 738 ("Consent of a child between the ages of thirteen and sixteen to engage in sexual intercourse is irrelevant where force or coercion is involved."). Section 30-9-11(G)(1) punishes any sexual penetration, regardless of consent, where the child is between thirteen and sixteen years old and the perpetrator is at least eighteen years old, is at least four years older than the child, and is not the child's spouse. *See Moore*, 2011-NMCA-089, ¶ 11 (concluding that "[a child's] consent or lack thereof is legally irrelevant" under Section 30-9-11(6)(1)). Finally, under Section 30-9-11(G)(2), consent is irrelevant when the child is between

19

the ages of thirteen and eighteen years old and the perpetrator is a school employee or volunteer, the perpetrator is at least eighteen years old, is at least four years older than the child, and is not the child's spouse, and the perpetrator learns while performing services for the school that the child is a student at the school. Unlike in *Moore*, where the victim was fourteen years old, whether J.Z. consented to sex with Defendant was legally relevant to the CSP-felony charge because sixteen-year-old J.Z. could have legally consented to sex with Defendant. Therefore, the omission of "without consent" from the jury instructions was erroneous.

{27}     Because Defendant failed to object to the proffered jury instruction or otherwise preserve this issue at trial, we will only reverse if the omission of "without consent" was fundamental error. *See Stevens*, 2014-NMSC-011, ¶ 42. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *Id.* (internal quotation marks and citation omitted). Under this standard, we must determine whether a reasonable juror would have been confused or misdirected "not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d

1134. "In applying the fundamental error analysis to deficient jury instructions, we are required to reverse when the misinstruction leaves us with 'no way of knowing whether the conviction was or was not based on the lack of the essential element.' " *State v. Montoya*, 2013-NMSC-020, ¶ 14, 306 P.3d 426 (quoting *State v. Swick*, 2012-NMSC-018, ¶ 46, 279 P.3d 747).

{28}     "[I]f the instructions omitted an element which was at issue in the case, the error could be fundamental." *State v. Orosco*, 1992-NMSC-006, ¶ 9, 113 N.M. 780, 833 P.2d 1146. Accordingly, we initially examine whether J.Z.'s consent was at issue in this case to determine whether the omission of this element could be fundamental error. *Cf. id.* ¶¶ 9-20 (concluding that it was not fundamental error to omit the unlawfulness element of criminal sexual contact of a minor under age thirteen where there was no evidence putting the lawfulness of the alleged acts "in issue," and therefore "no rational jury could have concluded that defendants had committed the acts without also determining that the acts were performed in the manner proscribed by law"). There is some evidence in the record that could have led the jury to infer that consent was at issue in this case. First, there was no evidence of physical injuries to corroborate J.Z.'s story that Defendant held him down and forced him to have sex. Second, during his interview with police Defendant did not deny having sex on May

21

25, 2008, so it would be possible to infer that he had consensual sex with J.Z. on that date. Third, Defendant's rigorous cross-examination of J.Z. focused on J.Z.'s changing account of the alleged sexual assault and his alleged unreliability. If the jury believed that J.Z. was in some way unreliable or not telling the truth, the jurors could have reasonably concluded that Defendant and J.Z. went to a remote location and engaged in consensual sex. Based on this testimony, we conclude that there was sufficient evidence presented to the jury to put consent at issue in this case, and we must therefore determine whether the omission of this essential element was fundamental error.

{29} Fundamental error occurs when jury instructions fail to inform the jurors that the State has the burden of proving an essential element of a crime and we are left with "no way of knowing" whether the jury found that element beyond a reasonable doubt. *Swick*, 2012-NMSC-018, ¶ 46; *see also* Rule 5-608(A) NMRA ("The court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury."). However, we need not conclude that there was fundamental error despite the court's failure to instruct on an essential element where "the jury's findings, in light of the undisputed evidence in the case, necessarily establish that the [omitted] element was met beyond a reasonable doubt." *Orosco*, 1992-NMSC-006,

¶ 15. For instance, in *Stevens* we held that it was not fundamental error to omit the element of unlawfulness from a CSP-felony instruction because the jury found beyond a reasonable doubt that the alleged sexual act occurred between the thirteen-year-old victim and the defendant's boyfriend, who was at least ten years older than the victim, and that under those circumstances, the sexual act could not be other than unlawful. 2014-NMSC-011, ¶¶ 43-46. In other words, the jury's finding in *Stevens* that the sexual act occurred beyond a reasonable doubt was necessarily also a finding that the act was unlawful beyond a reasonable doubt because the victim in that case could not legally consent to sex with that defendant, and there was no other evidence suggesting that the alleged sexual act could have been otherwise lawful, such as a touching for purposes of reasonable medical treatment. *See id.* Further, in *State v. Cunningham*, the failure to instruct on the essential element of unlawfulness or self-defense was not fundamental error because the jury received a separate self-defense instruction containing the appropriate burden of proof and the jurors specifically found beyond a reasonable doubt that the defendant did not act in self-defense, a finding which also satisfied the essential element that was erroneously excluded. 2000-NMSC-009, ¶¶ 9, 20-22, 128 N.M. 711, 998 P.2d 176.

{30} Turning to this case, to ascertain whether fundamental error occurred, we must

23

"review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the Defendant's conviction was the result of a plain miscarriage of justice." *State v. Sutphin*, 2007-NMSC-045, ¶ 19, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citations omitted). The State argues that if the omission of the entire "unlawful" element was not fundamental error in *Stevens*, then the district court's inclusion of that element and omission of only two words ("without consent") cannot be fundamental error in this case. However, as we have previously discussed, unlawfulness is at issue in this case, where at age sixteen the alleged victim had passed the age of consent, unlike the thirteen-year-old victim in *Stevens* who legally could not consent pursuant to Section 30-9-11(G)(1), and the conclusion that no fundamental error occurred in *Stevens* is therefore not dispositive here. The State further contends that the jury's other findings demonstrate that the jurors must have ultimately concluded that J.Z. did not consent to anal penetration by Defendant.

{31} The jury convicted Defendant of kidnapping by finding beyond a reasonable doubt that J.Z. was taken, restrained, confined, or transported by force, intimidation, or deception by Defendant. As part of the kidnapping conviction, the jury also found that Defendant intended to hold J.Z. against his will to inflict death, physical injury,

24

or a sexual offense on him. However, the jury's conclusions regarding Defendant's act of kidnapping do not establish beyond a reasonable doubt that it considered Defendant's separate act of anally penetrating J.Z. to have been non-consensual beyond a reasonable doubt, despite the fact that it found the anal penetration in this case to have taken place during the commission of kidnapping. The jury further found that Defendant committed a "sexual offense" against J.Z. during the kidnapping, despite the absence of a definition of "sexual offense" in the jury instruction. Therefore, the jury also could have reached this finding without an understanding that in this case, it had to find beyond a reasonable doubt that the anal penetration was non-consensual for Defendant's act to constitute a sexual offense. Finally, the jury hung on an alternative CSP-force/coercion count with respect to Defendant's anal penetration of J.Z. The only significant distinction between the jury instructions regarding CSP-force/coercion and those regarding CSP-felony was that the CSP-force/coercion instruction required the jury to additionally conclude beyond a reasonable doubt that Defendant used physical force, physical violence, or threats of physical force or physical violence against J.Z. While a finding that force or coercion was used during the sexual penetration is certainly not necessary to establish a lack of consent, if the jury had found this element beyond a reasonable doubt under

the alternative count, we would have no misgivings in concluding that the jury also necessarily found beyond a reasonable doubt that the sexual penetration in this case was non-consensual. Yet the jury apparently hung on this very element, and we therefore cannot draw any definitive conclusions regarding the jury's understanding of the role of consent from their findings regarding the CSP-force/coercion charge.

{32}     Moreover, we agree with Defendant that the juror questions submitted during trial hinted at juror confusion regarding the issue of consent. The record indicates that several juror questions were submitted to the district judge after the jurors were provided with the instructions. In one of those questions, a juror asked "[h]ow old you have to be to have consentual [sic] sex . . . ? We think [the SANE nurse] said the age was 13." Indeed, the SANE nurse who examined J.Z. testified that the age of consent in New Mexico was thirteen. Another juror asked what it meant that Defendant's act needed to be "unlawful," and further stated that the term "seems conclus[ory] or unnecessary." The district court responded to these questions by instructing the jurors, "you are to decide this case based on the testimony at trial and the jury instructions as a whole." These questions indicate some level of confusion regarding the age of consent in New Mexico and the meaning of the "unlawful act" element of CSP-felony, and further support our conclusion that the jurors in this case

26

may have been confused or misdirected as to whether Defendant could have still acted unlawfully if J.Z. had consented to sex. *See Benally*, 2001-NMSC-033, ¶ 12 ("Under [fundamental error review,] we seek to determine *whether a reasonable juror would have been confused or misdirected by the jury instruction*." (emphasis added) (internal quotation marks and citations omitted)). Accordingly, we hold that in the circumstances of this case, it was fundamental error to omit the element of consent from the jury instructions that were relevant to CSP-felony.

{33} Defendant only requests that his CSP-felony conviction be reversed as a result of this error. However, we are responsible for determining whether this fundamental error also infected his conviction for kidnapping. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 20, 278 P.3d 517 (concluding that appellate courts have a responsibility to raise issues sua sponte when it is necessary to protect a party's fundamental rights); *see also State v. Cabezuela*, 2011-NMSC-041, ¶ 39, 150 N.M. 654, 265 P.3d 705 ("It is the fundamental right of a criminal defendant to have the jury determine whether each element of the charged offense has been proved by the state beyond a reasonable doubt." (internal quotation marks and citations omitted)). We conclude that the error of omitting the element of consent from the jury instruction affected the kidnapping conviction. The jury instructions did not define

the term "sexual offense" beyond providing the elements of CSP and CSC through other instructions. Because the jury may have been confused or misdirected as to whether consensual sex between J.Z. and Defendant could still be a sexual offense, then the jury's finding under the kidnapping charge that Defendant intended to inflict death, physical injury, or a sexual offense on J.Z. was necessarily infected by the same potential confusion, affecting the verdict on the kidnapping charge in this case where there was not sufficient evidence to support the inference that Defendant intended to inflict death or a physical injury on J.Z. Therefore, because we cannot determine whether the jury found that the sexual act was non-consensual beyond a reasonable doubt, we must also reverse Defendant's kidnapping conviction for fundamental error.

{34} Because we have determined that we must reverse Defendant's convictions for CSP-felony and kidnapping, we are required to determine whether sufficient evidence was presented to support these convictions to avoid double jeopardy concerns should the State seek to retry Defendant. *State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930; *Cabezuela*, 2011-NMSC-041, ¶ 40. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every

28

element essential to a conviction." *Id.* ¶ 42 (internal quotation marks and citation omitted). In doing so, we view "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted).

{35} There was sufficient evidence to support Defendant's kidnapping and CSP-felony convictions. In this case, the alleged victim's testimony was by itself enough to establish every element of each offense beyond a reasonable doubt under a sufficiency of the evidence review. The jury could have reasonably inferred that Defendant took or transported J.Z. by deception based on J.Z.'s testimony that he got into Defendant's truck because Defendant said that he would take J.Z. home. Alternatively, J.Z. also testified that when he tried to escape from Defendant's truck, the door was locked—testimony from which the jurors could have reasonably concluded that Defendant confined J.Z. by force. Further, the jurors could have reasonably inferred that Defendant intended to hold J.Z. against J.Z.'s will to inflict a sexual offense against him based on J.Z.'s testimony that Defendant took him to a remote location, pulled down J.Z.'s pants, and then penetrated his anus. This evidence also supports a reasonable inference that Defendant caused J.Z. to engage in anal intercourse. Additionally, the jury also could have reasonably concluded that

Defendant's statement to J.Z. after ejaculating—"Now I can take you home"—indicated that Defendant transported J.Z. to a remote location and confined him there for the purpose of inflicting a sexual offense on him. J.Z.'s testimony regarding the sexual act in this case also supported a reasonable inference that Defendant's act against J.Z. was unlawful because the jury could have inferred that it was done without J.Z.'s consent and for the purpose of gratifying Defendant's sexual desire or to intrude upon J.Z.'s bodily safety or integrity. Further, because J.Z.'s account supported a conviction for kidnapping, the jury could have reasonably determined that the CSP in this case was committed during the course of the kidnapping since the sexual penetration occurred while J.Z. was either being transported by deception or confined by force. Ultimately, if the jury believed J.Z.'s story regarding his encounter with Defendant, it could have reasonably found that every element of both crimes was met beyond a reasonable doubt. Therefore, Defendant may be retried on both charges.

{36} Because we have determined that the omission of consent from the jury instructions rose to the level of fundamental error and requires reversal of both convictions, we need not reach the other issues raised by Defendant. However, to provide guidance on remand, we address (1) the admission of GPS evidence and

30

online identification evidence, and (2) the scope of Defendant's cross-examination of J.Z., but not any of the other arguments raised by Defendant. *See State v. Allison*, 2000-NMSC-027, ¶ 1, 129 N.M. 566, 11 P.3d 141 (stating that the Court may address additional issues "[f]or guidance upon remand"); *State v. Torres*, 1999-NMSC-010, ¶ 8, 127 N.M. 20, 976 P.2d 20 (same).

**III.    The District Court Did Not Abuse Its Discretion by Admitting Evidence Regarding J.Z.'s Identification of Defendant via the Internet or by Allowing Testimony Regarding the Fact that Defendant Was Subject to GPS Monitoring**

{37}    Defendant claims that the district court abused its discretion by admitting evidence that he wore a GPS monitoring device and that J.Z. found Defendant's picture, name, and address on an Internet website. Absent a clear abuse of discretion, we will not reverse a trial judge's decision to admit evidence. *State v. Apodaca*, 1994-NMSC-121, ¶ 23, 118 N.M. 762, 887 P.2d 756. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citations omitted).

{38}    Prior to trial, Defendant filed a motion to exclude any evidence that he wore a GPS tracker and was subject to GPS monitoring by the State, and any evidence that

31

J.Z. identified Defendant while viewing New Mexico's online sex offender registry. The district court ruled that the State could elicit the fact that Defendant was wearing a GPS device, but that it could not describe the nature of Defendant's underlying conviction. The district court later specified that if the GPS monitoring information was elicited through the testimony of parole authorities, they should simply be introduced as employees of the State of New Mexico without any further detail. The district court further held that the State could introduce evidence that J.Z. found Defendant's picture and other identifying information "on the Internet," but could not be more specific about the nature of the website.

{39}    As an initial matter, we reject Defendant's argument that we should consider his offer to stipulate to being with J.Z. at the time and place of the alleged sexual assault as precluding the State's need for the online identification and GPS evidence admitted by the district court. The State is "not bound to present its case to the jury through abstract stipulations," despite a defendant's offer to stipulate to certain facts. *State v. Martinez*, 1999-NMSC-018, ¶ 34, 127 N.M. 207, 979 P.2d 718. For example, in *State v. Sarracino*, this Court held that it was not an abuse of discretion to allow the State to elicit testimony regarding statements made by the defendant while threatening a couple with a gun when the defendant had offered to stipulate to making

the statements and had claimed that the circumstances surrounding their admission would be impermissible evidence of prior bad acts. 1998-NMSC-022, ¶¶ 5, 21-22, 125 N.M. 511, 964 P.2d 72. In that case, we looked only to whether the evidence of this uncharged prior bad act fit within an exception to Rule 11-404(B) NMRA, and did not consider the defendant's stipulation offer in our analysis. *See Sarracino*, 1998-NMSC-022, ¶ 22. Similarly, in this case we need not consider Defendant's offer to stipulate that he was with J.Z. at the times and places alleged to determine whether the GPS and online identification evidence was admissible under either Rule 11-404(B) or Rule 11-403 NMRA, or whether it improperly bolstered J.Z.'s testimony.

{40} We also disagree with Defendant's contention that admission of "[t]he fact that [Defendant] was on GPS monitoring and that his name and address were listed on a website inexorably leads to one conclusion: he was a convicted sex offender" and that this evidence was therefore improper evidence of prior bad acts under Rule 11-404(B). Rule 11-404(B)(1) excludes "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with [that] character." This rule only "prohibits the use of otherwise relevant evidence when its *sole purpose or effect* is to prove criminal

33

propensity." *State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828 (emphasis added).  However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Rule 11-404(B)(2).  In considering the online identification evidence in this case, the district court opined that "nowadays computer access and computer use is very common . . . .  I've thought about the whole issue of computer access and computer use, and we're in a new age, and it's the 21st  century, and it's just a fact of life."  We hold that it was not an abuse of discretion for the district court to conclude that the limited information admitted regarding J.Z.'s identification of Defendant through online information did not constitute evidence of a crime, a wrong, or another act under Rule 11-404(B).  The district court also determined that evidence of Defendant's GPS coordinates on the date of the alleged crime and the fact that he was wearing a GPS tracking device were admissible because they showed "identity, opportunity and lack of mistake."  We again conclude that it was not an abuse of discretion in this case to admit limited evidence that Defendant was on GPS monitoring.  The evidence did not have the sole purpose or effect of  proving criminal propensity, but was instead probative to material facts in the case because  (1) J.Z. testified that the person who assaulted him

34

was wearing a GPS monitor on his belt, which Defendant was required to wear; and (2) Defendant's GPS coordinates placed him in the same locations where J.Z. claimed to have been assaulted.

{41} We reject Defendant's additional contention that the probative value of the online identification and GPS evidence was substantially outweighed by a danger of unfair prejudice from its admission under Rule 11-403. As we have previously discussed, the district court limited the online identification evidence presented at trial to completely exclude the fact that J.Z. found Defendant's picture at an online sex offender registry. The district court did not abuse its discretion by admitting this limited version of J.Z.'s identification of Defendant because it was reasonable to conclude that the mere fact that J.Z. found Defendant's picture, name, and address online, without any additional information, was completely unremarkable and neither reflected negatively on Defendant nor created a danger of unfair prejudice. Similarly, the GPS evidence was limited to prevent any mention of why Defendant was being monitored. Under the circumstances of this case, the generic information that Defendant was subject to GPS monitoring was not overly prejudicial, and contrary to Defendant's suggestion, did not strongly imply that Defendant was a sex offender. During the hearing on Defendant's motion to exclude, the district court concluded

that individuals may wear a GPS device and be monitored by state employees for a variety of reasons, including pretrial monitoring programs and probation in cases not involving sex offenses. Indeed, during voir dire, two prospective jurors mentioned that they associated GPS monitoring with a DWI or other alcohol-related offense, but none of the prospective jurors mentioned any specific association with sex offenses. Thus, we do not conclude that there was an abuse of discretion in the district court's admission of the information that Defendant was subject to GPS monitoring by the State, without anything more, because any prejudice to Defendant did not substantially outweigh the probative value of this evidence in identifying Defendant as J.Z.'s alleged attacker.

{42} Finally, we reject Defendant's contention that presenting the online identification and GPS evidence improperly bolstered J.Z.'s credibility. Evidence will be excluded as improper bolstering when it directly comments on a witness's credibility, but not when it provides "[i]ncidental verification" of a witness's story or only indirectly bolsters that witness's credibility. *State v. Alberico*, 1993-NMSC-047, ¶ 89, 116 N.M. 156, 861 P.2d 192. For example, in *State v. Lucero*, a psychiatrist's testimony was improper bolstering when she commented directly on the victim's credibility, repeatedly mentioned that the victim claimed to have been assaulted by

36

the defendant, and opined that the victim's post-traumatic stress disorder was caused by sexual molestation. 1993-NMSC-064, ¶¶ 5-6, 15-17, 116 N.M. 450, 863 P.2d 1071. However, in this case the GPS evidence and online identification evidence only corroborated J.Z.'s testimony; it did not comment directly on his credibility or impinge in any way on the jury's role of assessing J.Z.'s story and determining whether he was telling the truth. Therefore, the admission of this evidence was not an abuse of the district court's discretion.

**IV. The District Court's Limitation of Defendant's Cross-Examination of J.Z. Was Not an Abuse of Discretion and Did Not Violate Defendant's Rights under the Confrontation Clause**

{43} Defendant argues that the district court erred by limiting his cross-examination of J.Z. Generally, "[t]he district court has broad discretion to control the scope of cross-examination, including the discretion to control cross-examination to ensure a fair and efficient trial." *State v. Bent*, 2013-NMCA-108, ¶ 10, 328 P.3d 677 (citation omitted). Prior to trial, the State filed a motion seeking to exclude Defendant from using any of J.Z.'s juvenile adjudications for impeachment purposes, to limit Defendant to only inquiring about the number of J.Z.'s felony convictions, and to exclude Defendant from using the names of any of those felonies with the exception of J.Z.'s conviction for commercial burglary. The record indicates that Defendant did

not file a written response. The district court held a hearing on this motion and ruled that (a) the names of J.Z.'s juvenile adjudications were not to be presented to the jury; (b) Defendant could mention J.Z.'s violations of his juvenile probation right after the alleged incident with Defendant because that was "a matter of motive"; (c) Defendant could not cross-examine J.Z. regarding J.Z.'s convictions for possession of a firearm by a felon and contributing to the delinquency of a minor as a result of a DWI because "it confuses the jury, it gets [them] into a mini trial," while J.Z.'s other felony convictions went to credibility and were fair game; (d) however, Defendant *could* refer to the existence of these other felony convictions without naming them; and (e) Defendant could ask about charges pending against J.Z., but could not detail those charges and could not bring in extrinsic evidence to prove them.

{44} First, Defendant contends that it was improper to limit cross-examination regarding J.Z.'s prior convictions and his experience with the criminal justice system as an adult and as a juvenile. Under Rule 11-609(D) NMRA, prior juvenile adjudications are admissible for impeachment of a witness only when they are offered in a criminal case, the witness is not the defendant, an adult's conviction for that offense would normally be admissible to attack credibility, and admitting the evidence is necessary to fairly determine guilt or innocence. At the hearing on the

38

State's motion, the district court indicated that Defendant could use J.Z.'s juvenile criminal history to show that J.Z. was in juvenile detention when he first accused Defendant and that his detention may have given him a motive to lie. At the hearing, Defendant agreed that he did not need to name J.Z.'s prior juvenile convictions, and the district court acknowledged that concession on the record. Therefore, Defendant did not properly preserve for appeal any objection with respect to the scope of permissible cross-examination regarding J.Z.'s juvenile convictions. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)).

{45} As to J.Z.'s adult convictions, under Rule 11-609(A) the district court must admit prior adult convictions for impeachment purposes if (1) the conviction is for any crime that is punishable by imprisonment for more than a year, subject to the balancing test of Rule 11-403, or (2) the conviction is for any crime involving a dishonest act or false statement. The district court permitted Defendant to refer by name to J.Z.'s felony convictions for commercial burglary, conspiracy to tamper with

39

evidence, and a probation violation on the charge of receiving or transferring a stolen vehicle. The district court also exercised its discretion under Rule 11-609(A)(1) by preventing Defendant from mentioning by name J.Z.'s prior convictions for possession of a firearm by a felon and contributing to the delinquency of a minor under Rule 11-403. However, Defendant would still be allowed to refer to the existence of these other felony convictions without naming those offenses. On appeal, Defendant does not state which specific convictions he should have been allowed to name, but instead merely makes a general reference to the jury's potential "misunderstanding of [J.Z.'s] possible motives and the extent to which he was familiar with the horse-trading aspect of the criminal justice system." We hold that the district court did not abuse its discretion in limiting how Defendant could refer to two of J.Z.'s prior adult felony convictions. Contrary to Defendant's arguments, the district court's ruling still allowed Defendant to elicit that J.Z. had frequent encounters with the criminal justice system and to argue that J.Z. was exaggerating his story to get a deal on some of his other charges.

{46}     Second, Defendant asserts that it was an abuse of discretion for the district court to limit his cross-examination of J.Z. regarding how J.Z. made his living on the streets, including the fact that J.Z. "used and/or sold drugs." The record reflects that

Defendant elicited testimony from J.Z. that J.Z. was hustling, panhandling, and selling drugs to survive on the streets. The district court then cut off any additional questions from Defendant regarding how J.Z. made his living on the streets because the court reasoned that selling drugs and being homeless was impermissible character evidence that was not relevant to any issues either in the case or to J.Z.'s credibility. However, the district court later allowed Defendant to elicit testimony from J.Z. that he had a bad memory from using drugs, presumably because that testimony was relevant to the jury's assessment of J.Z.'s reliability as a witness. Under these circumstances, we conclude that it was not an abuse of discretion for the district court to limit Defendant's cross-examination regarding J.Z.'s homelessness or drug use since the specific issue of how J.Z. made his living on the streets was of minimal relevance to any issues either in the case or to J.Z.'s credibility.

{47} Third, Defendant claims that it was an improper abuse of discretion for the district court to prevent Defendant from providing J.Z. with transcripts of his safehouse interview while J.Z. was on the stand to refresh J.Z.'s recollection and then impeach him with prior inconsistent statements. "The admission or exclusion of [an] inconsistent statement rests within the sound discretion of the trial court under the particular facts in this case and will not be reversed absent an abuse of that

41

discretion." *State v. Davis*, 1981-NMSC-131, ¶ 20, 97 N.M. 130, 637 P.2d 561. During cross-examination, Defendant asked J.Z. whether J.Z. had stated during his safehouse interview that Defendant punched him. J.Z. responded, "I believe so." Defense counsel asked J.Z. to show him where in the transcript he had made this statement. The State objected that showing J.Z. the transcript would be improper refreshment and improper impeachment. The district court sustained this objection and did not agree to Defendant's proposal of letting J.Z. review the entire transcript because it would have taken a significant amount of time and the issue was de minimus. Defendant was then allowed to resume his cross-examination of J.Z. regarding J.Z.'s safehouse statement, during which J.Z. stated that he was not sure what he said, that he may not have said it, and that he did not know if he said it. J.Z. finally agreed that he did not say that Defendant had punched him in the head during the interview. We conclude that the district court acted within its discretion to control cross-examination to ensure an efficient trial by denying Defendant's request to have J.Z. review the entire transcript of the safehouse interview to confirm that he never said he was hit in the head, and instead requiring Defendant to continue to cross-examine J.Z. to elicit this statement through testimony. *See Bent*, 2013-NMCA-108, ¶ 10.

{48} Fourth and finally, Defendant argues that these limitations on his cross-examination of J.Z. collectively violated Defendant's rights under the Confrontation Clause. The Confrontation Clause "guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (internal quotation marks and citation omitted). However, "the trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *State v. Smith*, 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254 (omission in original) (internal quotation marks and citation omitted). Although the extent of cross-examination is within the sound discretion of the district court, we still review de novo whether limits on cross-examination have violated the Confrontation Clause. *Id.*

{49} We disagree with Defendant's argument that the limitations on cross-examination in this case were analogous to those limitations held to be violations of the Confrontation Clause by the United States Supreme Court in *Davis*. In *Davis*, the defendant, who was accused of stealing a safe, was prohibited from cross-examining a witness against him regarding the fact that the witness was on probation for

43

burglary. 415 U.S. at 311-12. *Davis* held that the district court's limitations on cross-examination of the witness violated the defendant's confrontation rights because he was not permitted to produce evidence to create any record of the reason that the witness might potentially be biased or motivated to lie, such as the witness's fear that the police might otherwise suspect the witness of committing the crime, based on his prior criminal history. *See id.* at 317-18. Instead, "defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id.* By contrast, here the district court's limitations on cross-examination did not prevent Defendant from creating a record regarding potential credibility problems with J.Z.'s testimony. Indeed, the district court specifically *did not* limit Defendant's cross-examination regarding J.Z.'s prior convictions for crimes of dishonesty, and permitted Defendant to elicit general information illustrating that J.Z. had significant experience with the criminal justice system and made his living by hustling on the streets, both of which also provided fodder for Defendant's argument that J.Z. had motivations to fabricate his story. Therefore, we conclude that the district court's exercise of discretion to limit the extent of Defendant's cross-examination of J.Z. was proper and did not violate Defendant's rights under the

44

Confrontation Clause.

**CONCLUSION**

{50}    We reverse Defendant's convictions for CSP-felony and kidnapping and remand to the district court, where Defendant may be retried on those charges.

{51}    **IT IS SO ORDERED.**

 

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**BARBARA J. VIGIL, Justice**

45