2004-NMSC-007

87 P.3d 1061

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Maximilliano URBAN, Defendant–Petitioner.**

No. 28047.

Supreme Court of New Mexico.

Jan. 26, 2004.

Rehearing Denied March 23, 2004.

John B. Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, for Petitioner.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Albuquerque, for Respondent.

## OPINION

CHAVEZ, Justice.

{1} On June 12, 2001, Defendant conditionally pleaded no contest to aggravated assault and shoplifting, reserving his right to appeal the trial court's denial of his speedy-trial claim. The alleged crimes occurred on August 27, 1998. The State, however, did not indict Defendant until February 19, 1999, and did not arraign him until fourteen months later, April 10, 2000. The Court of Appeals affirmed the trial court in a memorandum opinion, and we granted Defendant's petition for certiorari. Although some of the delay is not considered in the analysis, we hold the State violated Defendant's right to a speedy trial. We are particularly troubled by the unexplained and unjustifiable fourteen-month gap between Defendant's indictment and his arraignment. We therefore reverse the trial court and the Court of Appeals and remand with instructions to dismiss the case with prejudice.

## I.  Facts

{2} On August 27, 1998, Defendant is alleged to have shoplifted cigarettes from a Wal–Mart in Las Cruces and to have assaulted a store guard with a knife when the guard tried to apprehend him. When he was apprehended, he was also found in possession of a heroin syringe. He was apparently arrested on that day, but there is great confusion, and no record evidence, of what he was arrested for or what happened next. Defendant asserted at the hearing below, and continues to assert on appeal, that he pleaded guilty in municipal court to possession of drug paraphernalia and shoplifting. Defendant concedes, however, that there is no record of any shoplifting plea in the municipal court records. It is clear from the record, on the other hand, that Defendant did plead guilty to possession of drug paraphernalia.

{3} At the time of his arrest, on August 27, 1998, it was also discovered that Defendant had outstanding warrants in Bernalillo County. Defendant was transported to Bernalillo County where, as a result of the outstanding warrants, he was committed to the Department of Corrections. Nearly six months later, on February 19, 1999, the State finally indicted Defendant on three counts arising from the Wal–Mart incident: shoplifting, aggravated assault with a deadly weapon, and possession of drug paraphernalia. There is no explanation in the record for the delay from the arrest to the indictment.

{4} After his indictment, a secured bond was placed on Defendant, and a criminal summons was sent to an address in Albuquerque ordering him to appear for arraignment on March 1, 1999. Defendant, who was in State custody at the time, did not receive the summons, and when he failed to appear for arraignment, the court issued a bench warrant for his arrest on March 2, 1999.

{5} On March 27, 2000, over one year after the bench warrant was issued, the State finally moved to transport Defendant to the Doña Ana District Court for arraignment on the Wal–Mart indictment. On April 10, 2000, nearly fourteen months after he was indicted, Defendant appeared at arraignment and pleaded not guilty. On May 2, 2000, defense counsel entered his appearance and filed several pretrial motions, including a demand for a speedy trial. Defendant himself filed a pro se motion to dismiss on May 22, 2000, alleging that the shoplifting and possession-of-drug-paraphernalia charges had been settled by his plea in magistrate court, and that the aggravated assault charge should be dismissed because he was not sent the target letter. Defendant also argued the entire indictment violated his right to a speedy trial. There is no explanation in the record why Defendant, then represented by an attorney, filed a pro se motion.

{6} The first trial setting was initially scheduled for August 9, 2000, but Defendant's attorney filed a stipulated motion for continuance on August 1, 2000, alleging that Defendant was in prison in the Santa Rosa facility, that defense counsel had not had the opportunity to meet with him, and that Defendant would agree to a rule extension. The State petitioned for a three-month rule extension on October 11, 2000, which the district court granted; the motion indicates that Defendant did not oppose it. This Court subsequently extended the time for six months, from January 11, 2001, to July 11, 2001.

{7} The district court scheduled the next trial date for June 12, 2001. On June 1, 2001, Defendant filed a motion to dismiss for a speedy-trial violation, which was heard and denied at the June 12, 2001 trial setting. Defendant then entered a conditional plea of no contest, expressly reserving his right to appeal the district court's denial of his speedy-trial motion and its determination of when Defendant became "accused" within that analysis. The Court of Appeals, in an unpublished memorandum opinion, affirmed the district court.

## II. Propriety of the Writ of Certiorari

{8} Initially, we must resolve an issue raised by the State in its answer brief, specifically whether Defendant properly invoked the appellate jurisdiction of this Court. The State, citing Rule 12–502(C)(4) NMRA 2003 and NMSA 1978, § 34–5–14 (1972), argues we should quash the writ of certiorari because Defendant failed to make a jurisdictional claim in his brief in chief. We disagree.

{9} Neither the rule nor the statute cited by the State would require Defendant to establish the propriety of the writ of certiorari in his brief in chief. Rather, Rule 12–502 governs petitions for writs of certiorari, and it requires that the petition allege one of four grounds for granting the writ. *See* Rule 12–502(C)(4)(a)–(d). On the other hand, Rule 12–213(A) NMRA 2003, which governs the contents of briefs in chief, does not require a party to restate the grounds for granting the writ of certiorari.

{10} Defendant alleged in his petition for a writ of certiorari that the State violated his rights as provided under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article II, Section 14 of the New Mexico Constitution. *See* Rule 12–502(C)(4)(c). Thus, we have jurisdiction to review Defendant's case by writ of certiorari because it "involves a significant question of law under the constitution of New Mexico or the United States." Section 34–5–14(B)(3); *State v. Ashley,* 1997–NMSC–049, ¶ 10, 124 N.M. 1, 946 P.2d 205 (noting this Court's certiorari power to address a violation of a defendant's constitutional right to a fair trial). Under Rule 12–502(D), the State-if it felt that the grounds for granting the petition were inadequate-was permitted to file a response within ten days of service of the petition, or within ten days of the granting of the petition. The State filed no such response in this case. Nothing in the Rules of Appellate Procedure would prevent the State from arguing in its answer brief that we should quash the writ, and indeed in some cases the jurisdictional argument may only become apparent during the course of briefing. Nonetheless, we would encourage parties whenever possible to present those argu-

ments in a response to the petition itself, as provided by Rule 12–502(D), rather than in the course of briefing the merits of the appeal.

## III. Speedy Trial Claim

{11} The parties agree this case is governed by the framework established by *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), under which courts balance the following four factors: (1) the length of the delay, (2) the reasons given for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *State v. Plouse*, 2003–NMCA–048, ¶ 34, 133 N.M. 495, 64 P.3d 522, *cert. denied* 133 N.M. 539, 65 P.3d 1094. We engage in a case-by-case balancing of all four factors in order to weigh the conduct of both the prosecutor and defense, and no one factor is talismanic. *State v. Kilpatrick*, 104 N.M. 441, 444, 722 P.2d 692, 695 (Ct.App. 1986); *Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990). The first factor, the length of the delay, serves two functions. Initially, the length of delay must cross a threshold to establish a presumption of prejudice and to trigger further inquiry into the other factors. Once that threshold has been crossed, the burden of persuasion shifts to the State to show that, considering the four factors as a whole, the defendant's constitutional rights have not been violated. *State v. Coffin*, 1999–NMSC–038, ¶¶ 55, 58, 128 N.M. 192, 991 P.2d 477. In evaluating the four factors, the length of delay is then balanced along with the others. *Id.* Although we defer to the trial court's resolution of factual matters, we independently evaluate the four factors to determine whether the right to a speedy trial has been violated. *Plouse*, 2003–NMCA–048, ¶ 34, 133 N.M. 495, 64 P.3d 522.

## A. Length of Delay

{12} The Court of Appeals identified February 19, 1999, the date the indictment was filed, as the moment the Sixth Amendment right to a speedy trial attached. In general, the right attaches when the defendant becomes an accused, that is, by "a filing of a formal indictment or information or arrest and holding to answer." *State v. Sanchez*, 108 N.M. 206, 206, 769 P.2d 1297, 1297 (Ct.App.1989). Defendant argues that he was arrested for these charges on August 27, 1998, and that he remained in detention from that time until his final plea. As noted, however, there is no record evidence to support Defendant's claim that he was charged with these two offenses on that date. Thus, he was not held to answer for these charges until the time of his indictment. *See State v. Ross*, 1999–NMCA–134, ¶¶ 13–15, 128 N.M. 222, 991 P.2d 507 (holding that an indictment or information must be filed in a felony prosecution in order to trigger a defendant's speedy trial right and that the filing of a complaint in magistrate court is insufficient). We therefore hold that the Court of Appeals correctly identified February 19, 1999, as the date Defendant's speedy-trial right attached. *Cf. Sanchez*, 108 N.M. at 206, 769 P.2d at 1297 (holding that the speedy-trial right does not attach upon arrest where defendant has been arrested, released without restriction, and charged nineteen months later); *State v. Jacquez*, 119 N.M. 127, 130, 888 P.2d 1009, 1012 (Ct.App.1994) (holding that time during which charges were dropped in good faith does not count towards finding a speedy-trial violation where the defendant is free of restrictions on his liberty).

{13} From the date of the indictment to the date Defendant pleaded no contest, twenty-seven months elapsed. Although not all of the delay can be attributed to the State, we do not consider the extent to which the delay can be attributed to the State or Defendant when first determining whether the delay is presumptively prejudicial. *State v. Lujan*, 112 N.M. 346, 348, 815 P.2d 642, 644 (Ct.App.1991). In *Salandre v. State*, 111 N.M. 422, 428, 806 P.2d 562, 568 (1991), we determined that nine months was the minimum period that would be considered presumptively prejudicial in a simple case. The State has conceded that this is a simple case. The Court of Appeals concluded, and the State conceded, that the lapse of this period of time is presumptively prejudicial. We agree. The twenty-seven month delay is presumptively prejudicial, which re-

quires us to evaluate the four factors to determine whether the State can establish that, on balance, Defendant's right to a speedy trial was not violated.

## B. Reasons for Delay

{14} The Court of Appeals concluded that, although the length of delay was presumptively prejudicial, the reasons for the delay do not weigh heavily against the State. The Court of Appeals reasoned that Defendant shares some of the blame for the delay between the indictment and the arraignment because he provided the State with the address to which the indictment was mailed. We disagree. The delay between the indictment in February 1999 and the arraignment in April 2000 is without justification and should therefore weigh against the State. There is neither allegation nor evidence in the record to establish that Defendant attempted to evade service by giving an incorrect address to the State. *Cf. Jacquez,* 119 N.M. at 128–29, 888 P.2d at 1010–11 (defendant provided three different addresses at three different times). The indictment did not reach Defendant because at the time the State mailed it to Albuquerque, he was in the State's custody.

{15} Contrary to the Court of Appeals, we find this case remarkably similar to *Zurla,* 109 N.M. at 643, 789 P.2d at 591, in which this Court held that the State's failure to locate the defendant who was in the custody of the Department of Corrections amounted to unacceptable "bureaucratic indifference" and weighed heavily against the State. 109 N.M. at 644, 789 P.2d at 592. The Court of Appeals distinguished *Zurla* on the grounds that the defendant in that case, while in custody, filed a pro se motion to have his trial set within six months. Defendant here, on the other hand, filed his pro se motion after having been found by the State and served with the indictment; that fact does distinguish this case somewhat from *Zurla.* Nonetheless, it still remains true that the State "could have located [the defendant] simply by placing a phone call to the Department of Corrections' Central Records Office." *Id.* at 641, 789 P.2d at 589. Indeed, with improvements in information technolo-

gy, the State can now more readily locate Defendant. For example, the Department of Corrections website allows the public to search for the location of its inmates online. *See* http://corrections.state.nm.us/offenderinfo/offenderinfo_search.htm (last updated Jan. 13, 2004). We hold the State should be charged with constructive knowledge of the whereabouts of those in its custody. While the facts of this case do not support a finding of "bureaucratic indifference," the State's negligent failure to serve Defendant with the indictment and arraign him on the charges for fourteen months is a lapse which we will weigh against the State in a speedy-trial analysis. The State has offered no reasonable explanation why it was not aware-or why it could not have become aware-that Defendant was in its custody.

## C. Assertion of the Right

{16} Although Defendant demanded a speedy trial three times, the Court of Appeals concluded that, considering the timing and nature of the demands, this factor should not be given much weight. The Court of Appeals correctly determined that each demand for a speedy trial was not as forceful as it could have been; nonetheless, we conclude it gave too little weight to the fact that Defendant asserted his right three times during these proceedings. The first of these motions came as part of the pro forma pretrial motions Defendant's counsel filed upon entering his appearance. Such pro forma motions are generally afforded relatively little weight in this analysis. *State v. Marquez,* 2001–NMCA–062, ¶ 21, 130 N.M. 651, 29 P.3d 1052. Defendant's pro se motion to dismiss for a speedy-trial violation was obviated by his counsel's subsequent motion for a continuance. Nevertheless, it is clear from Defendant's pro se motion, filed shortly after he was arraigned on the charges and served with the indictment, that he was personally concerned with his speedy-trial right. The mere fact that Defendant's attorney, for whatever reason, sought a continuance because he could not go to the Correction's facility to interview Defendant should not wholly erase Defendant's clear and immediate assertion of his right to a speedy trial. *See Barker,* 407 U.S. at 529, 92 S.Ct. 2182

(noting that a court is permitted "to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client"). On the whole, Defendant timely asserted his right to a speedy trial three times—one of which was pro se—and we conclude this factor weighs against the State.

## D. Prejudice

{17} We agree with the Court of Appeals that Defendant's actual prejudice was minimal, and does not weigh heavily in his favor. In *Barker*, the U.S. Supreme Court identified three sources of prejudice in a delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and most importantly, (3) impairment of the defense. 407 U.S. at 532, 92 S.Ct. 2182. In this case, Defendant was incarcerated on other charges and thus, despite the delay, was not subject to oppressive pretrial incarceration. Furthermore, Defendant was not made aware of this indictment until April of 2000. Thus, the period of incarceration and anxiety suffered prior to April of 2000 has no bearing on this case. *See State v. Crump*, 82 N.M. 487, 490, 484 P.2d 329, 332 (1971) ("[The defendant] could hardly have suffered anxiety and concern over the charges before he was returned to New Mexico, when he claims to have first learned of the charges."). In addition, it is difficult to understand why he would have experienced anxiety when he claims he had pleaded guilty to shoplifting and possession of drug paraphernalia shortly after his arrest.

{18} Defendant also claims the lengthy passage of time prevented him from locating and interviewing key witnesses. This claim is simply too speculative to be given much weight. Defendant identifies "Eric" as his key witness, a person whose last name the police never obtained. It is hard to see how the delay prevented Defendant from locating the witness when his full name and whereabouts were never known. Perhaps Defendant believes that had he been promptly indicted, then arraigned, the officer who identified the witness as "Eric" may have been able to refer to field notes to refresh his recollection, or that a fresher memory may have assisted the officer in fully identifying the witness. Significantly, however, Defendant failed to articulate how this witness may have been able to assist in his defense. Moreover, as the State indicated at the hearing below, the key witnesses were present and available for interview, but Defendant declined to interview them with one exception. Defendant's claims with respect to lost witnesses are, at best, speculative. *See State v. Lucero*, 91 N.M. 26, 29, 569 P.2d 952, 955 (Ct.App.1977) (noting the defendant's claims "concerning loss of witnesses[ ] is insufficient because defendant made no showing as to what testimony has been lost"); *see also Coffin*, 1999–NMSC–038, ¶ 71, 128 N.M. 192, 991 P.2d 477. Although the State bears the ultimate burden of persuasion, Defendant does bear the burden of production on this issue, and his failure to do so greatly reduces the State's burden. *Zurla*, 109 N.M. at 646, 789 P.2d at 594.

{19} Finally, Defendant claims he lost the opportunity to serve his multiple sentences concurrently. Such a loss is cognizable prejudice under our case law, *see Zurla*, 109 N.M. at 645, 789 P.2d at 593, but Defendant did not, in fact, suffer that loss: his judgment and sentence clearly indicates that "The Sentences as to Count 1 and 2 shall be served concurrent to each other and concurrent with the sentence the Defendant is presently serving." We thus agree with the Court of Appeals that this factor does not weigh heavily against the State.

## E. Balancing the Factors

{20} Defendant's trial commenced twenty-seven months after his indictment. The State failed to arraign Defendant on the charges until fourteen months after the indictment. Over half of the total delay in this case was thus caused by the State's unjustified negligence in not knowing that Defendant was in its custody. For this concededly simple case, nine months is the minimum delay that becomes presumptively prejudicial. Here, the total delay was three times that minimum amount, and the delay attributable solely to the State's negligence was five months greater than that nine months;

the delay thus weighs heavily against the State. *See Doggett v. United States,* 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (noting that, once a defendant establishes that delay was presumptively prejudicial, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim"). We have previously stated that "[o]n the question of prejudice, the delay may be so lengthy that the presumption of prejudice becomes well-nigh conclusive and proof of actual prejudice is unnecessary." *Work v. State,* 111 N.M. 145, 148, 803 P.2d 234, 237 (1990). While we do not necessarily hold this is such a case, we do conclude the total delay, and complete lack of an acceptable reason for fourteen months of it, creates a strong presumption of prejudice, too high for the State to rebut on the facts of this case.

## IV. Conclusion

{21} Because we have concluded that Defendant's judgment and sentence in this case must be dismissed with prejudice, we need not address Defendant's claim that he is entitled to credit for his presentence confinement from August 27, 1998. We reverse the Court of Appeals, and remand this case to the trial court to dismiss the charges against Defendant with prejudice.

{22} IT IS SO ORDERED.

MAES, Chief Justice, MINZNER, SERNA and BOSSON, Justices, concur.