This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: October 19, 2017**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                       **NO. S-1-SC-35577**

**BRYCE L. FRANKLIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
George P. Eichwald, District Judge

Hector H. Balderas, Attorney General
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett, P.C.
Linda Helen Bennett
Albuquerque, NM

for Appellant

**DECISION**

**NAKAMURA, Chief Justice.**

{1}    Defendant Bryce Franklin was convicted of first degree murder and other offenses.  He was sentenced to life imprisonment, plus seven and one-half years to be run consecutively and appeals directly to this court.  N.M. Const. art. VI, § 2; Rule 12-102(A)(1) NMRA.  Franklin contends that his convictions should be reversed and his case remanded for dismissal of the charges because "the district court erred in denying [his] multiple motions to dismiss for violations of his constitutional right to a speedy trial."  We reject this challenge and affirm his convictions.  We issue this non-precedential decision because Franklin raises no questions of law that New Mexico precedent does not already sufficiently address.  Rule 12-405(B)(1) NMRA.

**I.    BACKGROUND**

{2}    What follows is only a brief overview of the events in Franklin's case.  Additional facts will be presented as necessary in the course of our discussion.  On December 1, 2012, the police discovered the corpse of Fernando Enriquez at the bottom of a collapsed lava tube (a large hole) in El Malpais National Monument, which is in west-central New Mexico.  Information the police received indicated that Franklin had killed Enriquez.  When police discovered Enriquez's corpse and received the information linking Franklin to Enriquez's death, Franklin was already incarcerated for violating probation in an entirely unrelated matter and was serving the approximately five remaining years of a nine-year sentence.  A warrant to arrest

Franklin for the suspected killing of Enriquez was served on Franklin at the Cibola County Detention Center where he was already imprisoned.

{3} On December 17, 2012, Franklin was indicted for the murder of Enriquez. On December 26, 2012, Franklin filed a pro forma demand for a speedy trial. During pretrial proceedings, Franklin filed two almost-identical motions to dismiss for violation of his right to a speedy trial: the first was filed on May 1, 2014 and the second was filed on November 17, 2014.

{4} Franklin's trial commenced on August 10, 2015, roughly thirty-two months after he was indicted. The district court finally adjudicated the speedy-trial issue at the outset of trial. After both parties presented argument, the district court denied the motion. The court concluded that (1) Franklin's case is complex; (2) Franklin asserted his right to a speedy trial; (3) the delay was attributable to administrative difficulties; and (4) Franklin was not prejudiced by the delay as he was incarcerated for other matters during the entire period of delay. Franklin contends that the court was wrong when it concluded that his speedy trial rights were not violated.

**II.    DISCUSSION**

{5} We use the four-factor test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972) "[t]o determine whether the accused has been deprived of his speedy trial right." *State v. Samora*, 2016-NMSC-031, ¶ 9, 387 P.3d 230. We consider "(1) the length

3

of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *Id.* (internal quotation marks and citations omitted). "The Court weigh[s] these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* (alteration in original) (internal quotation marks and citations omitted). "In reviewing a district court's ruling on a speedy trial violation claim, we defer to the court's findings of fact, and we weigh and balance the *Barker* factors de novo." *Id.* (internal quotation marks and citation omitted).

**A.     Length of Delay**

{6}     "The first factor . . . has a dual function:  it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being 'presumptively prejudicial,' and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. "We have established benchmarks for presumptively prejudicial delay according to the complexity of a case:  one year for a simple case, 15 months for a case of intermediate complexity, and 18 months for a complex case." *Id.*

{7}     The district court found that Franklin's case is complex.  This determination is not challenged on appeal and we defer to that finding. *See State v. Thomas*,

4

2016-NMSC-024, ¶ 11, 376 P.3d 184 (observing that appellate courts defer to the trial court's finding regarding the complexity of any given case, as long as that finding is supported by substantial evidence). We must next determine the length of the delay.

{8} "The right to a speedy trial is implicated when the putative defendant becomes an 'accused.'" *Salandre v. State*, 1991-NMSC-016, ¶ 13, 111 N.M. 422, 806 P.2d 562, *holding modified on other grounds by State v. Garza*, 2009-NMSC-038, ¶ 22, 146 N.M. 499, 212 P.3d 387. A putative defendant becomes an "accused" upon the "filing of a formal indictment or information or arrest and holding to answer." *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (internal quotation marks and citation omitted). This is because "indictment, or the actual restraints of arrest and holding for charges, implicates the speedy trial guarantee." *Salandre*, 1991-NMSC-016, ¶ 14 (emphasis and footnote omitted).

{9} The warrant to arrest Franklin for killing Enriquez was served on Franklin on December 3, 2012. At that time, Franklin was already incarcerated and serving a sentence on other criminal matters. Thus, Franklin's liberty was not additionally restricted when he received the arrest warrant and any adverse consequences he experienced due to incarceration did not arise as a consequence of the arrest warrant. Accordingly, we measure the length of delay in Franklin's case not from the date the

arrest warrant was served but from the date he was indicted: December 17, 2012. *See State v. Haar*, 1990-NMCA-076, ¶ 18, 110 N.M. 517, 797 P.2d 306 (holding that the defendant's speedy trial right attached upon the filing of the indictment and not upon his arrest for other charges). Franklin agrees that the length of delay should be measured from the date of indictment.

{10} Franklin's trial commenced on August 10, 2015. The delay from indictment to trial is two years, seven months, and twenty-four days, or roughly thirty-two months. This delay stretched fourteen months beyond the eighteen-month benchmark for complex cases and is, therefore, presumptively prejudicial. *Serros*, 2016-NMSC-008, ¶ 22.

{11} We must next decide what weight to attribute to this delay. The district court offered no conclusion on this question. Franklin contends that the length of delay should weigh heavily against the State. Precedent points to a different conclusion.

{12} In *Thomas*, we determined that a twenty-six month delay in a complex case weighed against the state, but not heavily. 2016-NMSC-024, ¶¶ 9, 12. In *State v. Taylor*, the Court of Appeals was confronted with a simple case and delay of twenty-three and one-half months. 2015-NMCA-012, ¶¶ 8-9, 343 P.3d 199. The Court observed that this delay was "nearly twice as long as the twelve-month threshold for simple cases[,]" and, therefore, held that the period of delay weighed "heavily against

6

the [s]tate." *Id.* ¶ 9. In *State v. Moore*, the Court of Appeals reiterated that a "delay approximately twice as long as the threshold weighs heavily against the [s]tate[,]" and weighed the forty-six-month delay in the complex case heavily against the state. 2016-NMCA-067, ¶ 11, 378 P.3d 552. Delay two times the eighteen-month benchmark for a complex case weighs heavily against the state. Delay beyond the eighteen-month benchmark but that is not quite two times the benchmark weighs against the state, but not heavily.

{13} In Franklin's case, the thirty-two month delay was four months shy of twice the eighteen-month benchmark. Therefore, we weigh the length of delay factor against the State, but not heavily.

**B.     Reasons for the Delay**

{14} "The second factor in the *Barker* analysis, the reason for the delay, requires a court to evaluate the reason the government assigns to justify the delay." *Serros*, 2016-NMSC-008, ¶ 29 (internal quotation marks and citations omitted). We recognize four types of delay and attribute a different weight to each type: (1) justified delay for valid reasons, such as a missing witness, is weighed neutrally; (2) negligent or administrative delay is weighed slightly against the state; (3) bad faith delay is weighed heavily against the state; and (4) delay caused by the defense weighs

7

against the defendant. *Serros*, 2016-NMSC-008, ¶ 29; *State v. Spearman*, 2012-NMSC-023, ¶ 25, 283 P.3d 272.

{15} The district court found that "the reason for delay was administrative" but did not explain this finding or state how the reasons for delay factor weighed in the final balance. The State concedes that the reasons for delay were administrative or negligent and weigh slightly against it. As the following analysis shows, this concession is appropriate.

{16} The delay in this case can be divided into four discrete periods discussed below. *See Samora*, 2016-NMSC-031, ¶ 12 (grouping the total delay into discrete periods and evaluating what weight to attribute each grouping so as to resolve the issue of which party the reasons for delay weighs against and how heavily).

**1. December 17, 2012 to September 16, 2013**

{17} Franklin was indicted on December 17, 2012, and his case was joined with Clifford Bearden's case that same day. Bearden was present for the shooting, witnessed the murder, was charged with murder and conspiracy, and ultimately agreed to testify against Franklin. On January 9, 2013, the district court entered a scheduling order setting trial for April 22, 2013. On January 10, 2013, Franklin excused the initial trial judge. Another judge from the Thirteenth Judicial District who did not normally preside at the Cibola County Courthouse was assigned.

8

{18} On February 22, 2013, a pretrial conference was scheduled for May 2, 2013. At that pretrial conference, Bearden's counsel alerted the court that Franklin's and Bearden's cases might need to be severed. Franklin's counsel went further and insisted that the cases had to be severed. The judge instructed the parties to file a motion to sever and emphasized that he wished to avoid scheduling joint settings if the cases would be severed. The judge also explained that there was a limited amount of court time and space available and did not want to dedicate that time and space to matters that could not move forward. Lastly, the court informed the parties that Franklin's case would not be heard in calendar year 2013, but would likely be set for spring 2014 because the court had other homicide trials to hear.

{19} Bearden's counsel filed the motion to sever on June 26, 2013, nearly two months after the pretrial hearing. At the same time, Bearden's counsel also filed a notice of unavailability for July and early August 2013. Franklin concurred with the motion to sever. The court heard the motion on August 22, 2013, two months after it was filed and at a time when Bearden's counsel was available. It granted the motion on September 9, 2013, and entered an amended order on September 16, 2013, severing Franklin's and Bearden's cases.

{20} Franklin must have understood that his decision to excuse the first trial judge—who had entered a scheduling order based on her availability—and his

9

decision to concur in severing his case from Bearden's—which would require scheduling individual case settings—would necessarily cause delay. The unavailability of Bearden's counsel also contributed to the delay. Additionally, the judge emphasized that any rescheduling would necessarily produce delay as there was limited court time and space and because he was not the presiding judge at the Cibola County Courthouse. Accordingly, both parties knew that any justified delays would likely be compounded by circumstances beyond the control of the parties or the court. For these reasons, we conclude that this nine-month period of delay weighs neutrally as the type of delay that might occur in any case. *See State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (concluding that delay during which a case moves forward with customary promptness should not be held against either party).

**2.      September 16, 2013 to May 13, 2014**

{21}     No activity occurred in Franklin's case from September 16, 2013 until January 2014, when a new prosecutor took over the case. On February 14, 2014, the State requested that the court set a pretrial conference and trial date. Two and one-half weeks later, a pretrial conference was set for May 13, 2014. On May 1, 2014, Franklin filed his first motion to dismiss on grounds that his right to a speedy trial had been violated. On May 12, 2014, the State filed a response to this motion. On the

10

morning of May 13, 2014, the court entered a scheduling order titled "Notice of Definite Trial Scheduling Order and Discovery Order." The order set the trial for December 9, 2014. The pretrial conference commenced a few hours after the court set the December trial date. At the conference, the court handed Franklin's counsel the notice of definite trial scheduling order and informed Franklin that his motion to dismiss and any other outstanding motions would be addressed at a later date. The court also informed the parties that it would reserve two to four weeks in December 2014 to try all of the cases arising from Enriquez's killing—in addition to the charges filed against Franklin and Bearden, the State also brought charges against Franklin's mother and sister for tampering with evidence related to Enriquez's murder—and identified the order in which the various trials would proceed. At the conclusion of the hearing, Franklin stated that, for the record, he wished to renew his demand for a speedy trial.

{22} The change in prosecutors led to the inactivity during this eight-month period. Nothing happened at all in Franklin's case between mid-September 2013 and January 2014, a four-month time period. The State finally took action to make case progress in mid-February 2014, a month after the new prosecutor was assigned to the case. It took until mid-May 2014, another three months, to get a trial date. We attribute this eight-month period of delay to the State, and weigh it slightly against the State as

11

administrative delay. *See State v. Gallegos*, 2016-NMCA-076, ¶¶ 12-13, 387 P.3d 296 (weighing a period of delay in which the defendant's case "did not move forward at all" against the state as "negligent and/or administrative delay").

**3.      May 14, 2014 to May 18, 2015**

{23}      On May 14, 2014, the State learned that certain physical evidence had not been submitted to the New Mexico Forensic Laboratory due to an oversight by the state police. Two months later, on July 14, 2014, the state police rectified the oversight and submitted the evidence to the laboratory. On October 22, 2014, the State learned that, due to understaffing, the laboratory required an additional four to six weeks to fully process the evidence.

{24}      On October 27, 2014, the State filed a motion to continue the trial explaining that the laboratory results were expected to become available shortly before the December 9, 2014 trial date. Therefore, the State posited that the best course of action was to postpone the trial to ensure availability of the evidence at trial. On November 3, 2014, the State filed a request for a hearing on this motion.

{25}      On November 12, 2014, the State issued a series of subpoenas for its trial witnesses informing them of the December 9, 2014 trial date. One of those subpoenas was sent to Agent Nathan Lucero. Five days after the subpoenas were issued, on November 17, 2014, Franklin filed another motion to dismiss for violation of his right

12

to a speedy trial. That same day, the State filed a supplemental motion to continue the trial explaining that Agent Lucero is "a critical witness in this case" and would be unable to appear at the December 9, 2014 trial due to mandatory training that could not be rescheduled. Only a few hours after the State filed its supplemental motion to continue trial, Franklin filed a response arguing that the State's initial motion and supplemental motion to continue the trial should be denied. Franklin pointed to his motions to dismiss for violation of his right to a speedy trial and asserted that continuing the trial would violate his speedy-trial rights. On November 19, 2014, the State filed a response to Franklin's November 17, 2014 motion to dismiss and asked the court to deny the motion.

{26} On November 21, 2014, an additional pretrial conference was conducted at which the parties were given an opportunity to present their positions on the State's motion and supplemental motion to continue trial. Franklin emphasized the "speedy trial issues" and asked the court to deny the motion. The court rejected this request and continued the trial as it believed doing so was the only way to ensure fairness. The court made clear, however, that any future requests by the State to continue trial would be denied. The court was uncertain when trial might be reset, and once more noted that limitations on court time and space made scheduling blocks of time for a trial difficult.

{27}    On December 1, 2014, the district court entered a written order continuing the trial due to the unavailability of Agent Lucero.  On December 9, 2014, the court entered a scheduling order which indicated that the court would schedule a trial date as soon as a courtroom became available and reiterated that any additional trial continuances requested by the State would be denied.  On January 13, 2015, the court filed a notice that trial had been set for May 18, 2015, and "faxed/mailed" a copy of the notice to the parties.

{28}    The delay caused by the evidence processing oversight—a seven-month period stretching from May 14, 2014 when the oversight was discovered to shortly before the December 9, 2014 trial date when the laboratory estimated that the evidence would be available—was occasioned by mistake.  This delay is negligent and/or administrative delay, which is weighed slightly against the State.  *See Spearman*, 2012-NMSC-023, ¶ 25 ("Negligent or administrative delay is weighed against the [s]tate . . . but such a reason is not weighed heavily.").  The delay caused by Agent Lucero's unavailability—a five-month period stretching from the December 9, 2014 trial date which was canceled due to Agent Lucero's unavailability to May 18, 2015, the first available trial date after the court canceled the December trial—is weighed neutrally.  *See id.*  ("[A] valid reason, such as a missing witness, should serve to

14

justify appropriate delay." (internal quotation marks and citation omitted). On balance, this twelve-month period of delay is weighed slightly against the State.

**4.    May 18, 2015 to August 10, 2015**

{29}    On February 17, 2015, a little over a month after the court reset the trial for May 18, 2015, defense counsel filed a motion to continue trial in which he explained that a teaching engagement in New York conflicted with the May trial date. On February 20, 2015, the court granted Franklin's motion to continue trial and reset the trial date for August 10, 2015. The trial finally commenced on August 10, 2015.

{30}    The delay of three months, from May 18, 2015 to August 10, 2015, was a result of defense counsel's personal obligations. Normally, such delay would weigh against Franklin. *See Serros*, 2016-NMSC-008, ¶ 29 ("[D]elay caused by the defense . . . weighs against the defendant." (internal quotation marks and citation omitted)). However, the only reason that the trial was scheduled for May 18, 2015 was due to the State's varying continuance requests. Therefore, it is fair to conclude that the delay precipitated by defense counsel was itself the product of the delay caused by the State. We conclude that this three-month period of delay weighs neutrally.

**5.    Balancing the four discrete periods**

{31}    The delay in this case totaled thirty-two months and has been divided into four periods. The delay arising from periods one and four weighs neutrally and amounts

15

to twelve months. The delay arising from periods two and three weighs slightly against the State and totals twenty months. On balance, the reasons for the delay weigh slightly against the State.

**C.    Assertion of the Right to Speedy Trial**

{32}    The district court found that Franklin did assert his right to a speedy trial but offered no specific finding as to how forcefully Franklin asserted the right or how this factor should be weighed. Franklin's assertions consisted of written motions and oral assertions at hearings. Franklin filed a written pro forma demand for speedy trial on December 26, 2012. Sixteen months later, on May 1, 2014, Franklin filed a motion to dismiss for violation of his right to a speedy trial. At the May 13, 2014 pretrial conference, Franklin orally noted for the record that he wished to renew his demand for a speedy trial. Six and one-half months later, on November 17, 2014, Franklin filed another motion to dismiss for violation of his right to a speedy trial. This motion was identical to the May 1, 2014 motion in nearly every way except that the dates were adjusted to reflect the passage of additional time. Franklin also orally raised the issue of his speedy trial rights at the hearing on November 21, 2014 and at the outset of trial on August 10, 2015 when the court finally addressed the issue.

{33}    Franklin does not specify how this factor should be weighed but asserts only that he "repeatedly and vigorously asserted his right to a speedy trial." The State

contends that this factor should be weighed in Franklin's favor, but not heavily. Franklin sufficiently asserted his right to a speedy trial to weigh the assertion of the right factor in his favor. *See Spearman*, 2012-NMSC-023, ¶¶ 32-33 (weighing the assertion of the right factor against the state where the defendant filed an initial pro forma motion to dismiss based on speedy trial grounds as well as a later, additional motion to dismiss). But because the district court found no reason to weigh this factor heavily in Franklin's favor, we too decline to do so. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 37, 327 P.3d 1129 (weighing the assertion of the right factor heavily in the defendant's favor because "[t]he district court found that [the d]efendant ha[d] vociferously asserted her right to a speedy trial . . ." (third alteration in original) (internal quotation marks and citation omitted)). We conclude that this factor weighs slightly in Franklin's favor, which is merely another way of saying it weighs only slightly against the State.

**D.    Prejudice**

{34}    "This Court must analyze three separate interests to determine whether [the d]efendant suffered prejudice: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Samora*, 2016-NMSC-031, ¶ 21 (internal quotation marks and citation omitted). "[The d]efendant must make a particularized showing of

17

prejudice to demonstrate a violation of any of the three interests." *Id.* We weigh the first two "factor[s] in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35. "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Serros*, 2016-NMSC-008, ¶ 89 (internal quotation marks and citation omitted). "The third type of prejudice is the most serious. Again, however, it is necessary for a defendant to substantiate this type of prejudice." *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted).

{35} Franklin was incarcerated and serving a sentence on another offense unrelated to Enriquez's killing during the entirety of the pretrial delay in this case. Thus, he cannot establish that he was subjected to oppressive pretrial incarceration. *See Urban*, 2004-NMSC-007, ¶ 17 ("In this case, [the d]efendant was incarcerated on other charges and thus, despite the delay, was not subject to oppressive pretrial incarceration."). Nonetheless, Franklin asserts that his pretrial incarceration was somehow uniquely oppressive because he was placed in "extreme, restricted 'lockdown.'" To support this claim, Franklin directs us to allegations offered by his trial counsel about the alleged conditions of imprisonment. This is inadequate. *See*

18

*State v. Fierro*, 2014-NMCA-004, ¶ 24, 315 P.3d 319 ("Defendant solely made an assertion of prejudice through counsel and mere assertions are insufficient to prove this factor."); *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Our independent review of the record reveals that there is no evidence to support the allegation that the conditions of Franklin's imprisonment were somehow "extreme."

{36} Franklin does not assert that he suffered undue anxiety or concern while incarcerated. Rather, he cites rules and cases discussing this type of prejudice. We will not make arguments for Franklin or guess at what arguments he might have made. *See Dominguez v. State*, 2015-NMSC-014, ¶ 15, 348 P.3d 183 ("[C]ourts will not [make] arguments on a party's behalf . . . ."); *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 ("[T]he appellate court does not review unclear or undeveloped arguments."). Franklin has not established that he suffered undue anxiety or concern.

{37} Impairment of the defense can be "the loss of any exculpatory witnesses, the deterioration of exculpatory evidence, or any other kind of particularized prejudice to his defense." *Samora*, 2013-NMSC-038, ¶ 27, 307 P.3d 328. Franklin does not argue that evidence was lost or witnesses' memories clouded as a consequence of the delay. Rather, he contends that communication with his appointed attorney was difficult because he was incarcerated in Clayton during the pretrial delay. The State

responds that this allegation does nothing to prove Franklin's defense was impaired by the delay as Franklin was already incarcerated and serving the remainder of a sentence on unrelated charges. Thus, the State argues, any difficulties that did arise due to Franklin's place of incarceration did not arise from the pretrial delay. We agree and conclude that Franklin has not established that the delay in this case impaired his defense.

{38}    Franklin failed to demonstrate that he suffered any of the three recognized forms of prejudice. Hence, he has not proved that he suffered particularized prejudice.

**E.    Balancing the Four Factors**

{39}    Franklin failed to demonstrate that he suffered particularized prejudice. "To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate." *Samora*, 2016-NMSC-031, ¶ 23. The three other factors all weigh only slightly against the State. Thus, the delay in this case did not violate Franklin's right to a speedy trial.

{40}    For the foregoing reasons, Franklin's convictions are affirmed.

{41}    **IT IS SO ORDERED**.

_____
**JUDITH K. NAKAMURA, Chief Justice**

20

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**