| STATE V. PARRA |

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**REYNALDO PARRA,**
**Defendant-Appellant.**

Docket No. A-1-CA-35854
COURT OF APPEALS OF NEW MEXICO
April 15, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Jacqueline D. Flores, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Maris Veidemanis, Assistant Attorney General, Santa Fe, NM, for Appellee

L. Helen Bennett, P.C., L. Helen Bennett, Albuquerque, NM, for Appellant.

**JUDGES**

JACQUELINE R. MEDINA, Judge. WE CONCUR: M. MONICA ZAMORA, Chief Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** JACQUELINE R. MEDINA

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Defendant Reynaldo Parra appeals his convictions for five counts of criminal sexual penetration (CSP), two counts of criminal sexual contact (CSC), and one count of interference with communications. Defendant raises two issues on appeal: (1) he asserts that his right to be free from double jeopardy was violated by being subject to retrial; and (2) he asserts his constitutional right to a speedy trial was violated. We affirm.

**BACKGROUND**

**{2}** Because this is a memorandum opinion, we set forth only such facts and law as are necessary to decide the merits. On January 13, 2014, Defendant was charged with six counts of CSP, in violation of NMSA 1978, Section 30-9-11(D)(1) (2009); five counts of CSC, in violation of NMSA 1978, Section 30-9-12(C)(1) (1993); two counts of kidnapping, in violation of NMSA 1978, Section 30-4-1(A)(4) (2003); one count of interference with communications, in violation of NMSA 1978, Section 30-12-1(D) (1979); and one count of incest, in violation of NMSA 1978, Section 30-10-3 (1963).

**{3}** Defendant's first trial was conducted in August 2015, in which Defendant intended to raise an insanity/lack of specific intent defense. On the second day of this trial, the jury was shown—over Defendant's objection—a redacted lapel recording taken of Defendant by Officer Fred Duran. During cross-examination, Officer Duran testified that other lapel recordings existed. Defense counsel immediately approached the bench and, citing *Brady v. Maryland*, 373 U.S. 83 (1963), moved for a mistrial on the ground that the State failed to disclose the other recordings to the defense. The State replied that it had provided the defense with all the material in its file and that it had no knowledge of the existence of the other recordings. The district court released the jury for the day, providing the State with an opportunity to look into the other recordings and to respond to Defendant's motion for a mistrial.

**{4}** The following day, the district court, Defendant, and the State questioned Officer Duran, outside the presence of the jury, about the existence of additional lapel recordings. Officer Duran testified that lapel recordings were taken by other officers, but because they were not tagged properly they never appeared on the evidence list provided to the prosecutor and defense counsel. Because lapel recordings that are not properly tagged are deleted after 120 days, the additional lapel recordings were destroyed.

**{5}** The State suggested alternatives to granting Defendant's motion for a mistrial such as presenting testimony regarding Defendant's behavior on the day of his arrest from the other officers and instructing the jury that the missing evidence would have been favorable to the defense. Defense counsel countered, "I don't believe that any less drastic a remedy than mistrial is appropriate here." The district court observed that the redacted recording left the jury with an impression of Defendant that cut against his insanity/lack of specific intent defense and that the alternatives suggested by the State would not adequately address this concern. The district court noted that Officer Duran's testimony surprised both parties and the court, and neither party was at fault. The district court granted Defendant's motion for a mistrial and announced a finding of manifest necessity, allowing the State to retry Defendant.

**{6}** Two months later, Defendant moved to bar retrial on double jeopardy grounds, asserting that the district court erred in finding manifest necessity. The newly assigned district court judge applied the prosecutorial misconduct standard set forth in *State v. Breit*, 1996-NMSC-067, ¶¶ 19-24, 122 N.M. 655, 930 P.2d 792, and rejected

Defendant's double jeopardy claim. Defendant additionally moved to dismiss on speedy trial grounds. The district court concluded that Defendant's speedy trial right had not been violated.

**{7}** Defendant was retried and, following directed verdicts on certain counts, the jury convicted Defendant of five counts of CSP, two counts of CSC, and one count of interference with communications. We reserve further discussion of the procedural history for our speedy trial analysis.

## DISCUSSION

### Retrial Is Not Barred by Double Jeopardy

**{8}** Upon Defendant's motion for a mistrial, based on a claim of prosecutorial misconduct for not disclosing the existence of other lapel recordings, the district court declared a mistrial on a finding of manifest necessity. The district court subsequently denied Defendant's motion to bar retrial. Defendant contends that retrial should have been barred because the district court abused its discretion in finding a manifest necessity for a mistrial. Defendant limits his double jeopardy argument to an analysis of whether the district court abused its discretion in finding manifest necessity. The State argues that, because Defendant moved for a mistrial, the proper legal standard for addressing Defendant's claim is set forth in *Breit* and that the prosecutorial misconduct in this case does not rise to the level that would bar retrial. We agree.

**{9}** As we previously have noted, where a mistrial is declared at the defendant's behest, cases "concerning the 'manifest necessity' standard for mistrials declared sua sponte by the [district] court are inapplicable." *State v. Lucero*, 1999-NMCA-102, ¶ 12, 127 N.M. 672, 986 P.2d 468. Instead, in cases such as this one, "[t]he general rule is that a motion for mistrial by defendant ordinarily removes the barrier to reprosecution. An exception occurs where the motion is the result of prosecutorial overreaching." *Id.* ¶ 13 (alteration, internal quotation marks, and citation omitted). To determine whether, under our state constitution, double jeopardy bars retrial after a defendant successfully moves for mistrial because of prosecutorial misconduct, we apply the three-prong test adopted by our Supreme Court in *Breit*:

> Retrial is barred under Article II, Section 15, of the New Mexico Constitution, [(1)] when improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, [(2)] and if the official knows that the conduct is improper and prejudicial, and [(3)] if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal.

*Breit*, 1996-NMSC-067, ¶ 32. This standard "suggests that double jeopardy will rarely bar reprosecution if the misconduct is an isolated instance during the course of an otherwise fair trial." *Id.* ¶ 33.

**{10}** "[A]ppellate review of a prosecutorial misconduct claim presents a mixed question of law and fact." *State v. McClaugherty*, 2008-NMSC-044, ¶ 39, 144 N.M. 483, 188 P.3d 1234. Therefore, "[t]he appellate court will defer to the district court when it has made findings of fact that are supported by substantial evidence and reviews de novo the district court's application of the law to the facts." *Id.* Additionally, we apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Gonzales*, 2013-NMSC-016, ¶ 13, 301 P.3d 380. Because we conclude that the third prong of the *Breit* test is not satisfied, we do not address the first or second prongs. *See Lucero*, 1999-NMCA-102, ¶ 23 (acknowledging that a conclusion that one of the *Breit* prongs is not satisfied disposes of a defendant's double jeopardy argument).

**{11}** As used in the third prong of the *Breit* test, "willful disregard" "emphasiz[es] that the prosecutor is actually aware, or is presumed to be aware, of the potential consequences of his or her actions. The term connotes a conscious and purposeful decision by the prosecutor to dismiss any concern that his or her conduct may lead to a mistrial or reversal." *Breit*, 1996-NMSC-067, ¶ 34. "[D]ouble jeopardy may be triggered by prosecutorial misconduct other than the intentional provocation of a mistrial." *Id.* ¶ 36. In *McClaugherty* our Supreme Court clarified, "the *Breit* objective standard is based on the prosecutor's conduct as it manifests at the trial, not the motivation for that conduct." *McClaugherty*, 2008-NMSC-044, ¶ 27. However, when the intent to provoke a mistrial is absent, "the misconduct necessary to bar a retrial must be extraordinary." *Lucero*, 1999-NMCA-102, ¶ 26 (internal quotation marks and citation omitted).

**{12}** To determine whether the prosecutor's conduct amounts to "willful disregard" of a resulting mistrial, retrial, or reversal, we carefully examine the prosecutor's conduct in light of the totality of the circumstances of the trial. *See Breit*, 1996-NMSC-067, ¶ 40. The district court found that the prosecutor was unaware, prior to Officer Duran's testimony, that additional lapel recordings of Defendant had been made, a finding fully supported by the record. On the second day of trial, after Officer Duran disclosed that other lapel recordings had been made, the prosecutor stated that she had no knowledge of the other lapel recordings. Officer Duran corroborated the prosecutor's statement when he explained that an error in tagging the lapel recording resulted in the exclusion of other recordings on the evidence log provided to the State.

**{13}** We agree with the district court that there is nothing indicating the prosecutor acted in willful disregard of an impending mistrial by her failure to disclose the prior existence and contents of the other lapel recordings, of which she had no knowledge. *See Lucero*, 1999-NMCA-102, ¶ 27 (concluding the prosecutor did not act in willful disregard where mistrial was caused by the prosecutor's disclosure of witness statement on second day of trial and there was no evidence that the prosecutor was aware of the statement earlier). Accordingly, we hold that double jeopardy did not bar Defendant's retrial.

**Defendant's Constitutional Right to Speedy Trial Was Not Violated**

**{14}** Defendant contends his constitutional right to a speedy trial was violated. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI; *see also* N.M. Const. art. II, § 14 ("[T]he accused shall have the right to . . . a speedy . . . trial."). Preventing prejudice to the accused is at the heart of the speedy trial right, which also emanates from "the concomitant 'societal interest in bringing an accused to trial.' " *State v. Serros*, 2016-NMSC-008, ¶ 4, 366 P.3d 1121 (quoting *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387).

**{15}** "In determining whether a defendant's speedy trial right was violated, [the appellate courts have] adopted the United States Supreme Court balancing test in *Barker v. Wingo*, 407 U.S. 514 . . . (1972)." *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. We consider: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *State v. Samora*, 2016-NMSC-031, ¶ 9, 387 P.3d 230. We "weigh[] these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* (internal quotation marks and citation omitted). In reviewing these factors, "we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

## 1.    The Length of Delay Is Presumptively Prejudicial and Weighs Against the State

**{16}** We first determine whether the length of the delay is presumptively prejudicial. "The first factor, the length of delay, has a dual function: it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being presumptively prejudicial, and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *Serros*, 2016-NMSC-008, ¶ 22 (internal quotation marks and citation omitted). Our Supreme Court has established benchmarks for presumptively prejudicial delay according to the complexity of a case: twelve months for a simple case, fifteen months for a case of intermediate complexity, and eighteen months for a complex case. *Garza*, 2009-NMSC-038, ¶¶ 47-48.

**{17}** The district court determined and the parties agree that this was a case of intermediate complexity. "We defer to the district court's finding of complexity" when it is supported by the record. *State v. Ochoa*, 2017-NMSC-031, ¶ 15, 406 P.3d 505. Given the nature of the allegations, Defendant's insanity defense, and the number of charges, we agree that the case is of intermediate complexity. *See State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (stating that "[c]ases of intermediate complexity . . . seem to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence"). The delay in this case of over fifteen months thus triggers a consideration of the four *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 48.

**{18}** Defendant's speedy trial right attached when he was arrested on December 23, 2013. *See Laney*, 2003-NMCA-144, ¶ 10 (stating that the right to a speedy trial attaches when the defendant becomes an accused, either by arrest, indictment, or criminal information). Defendant's second jury trial began on April 25, 2016. The State, therefore, failed to bring the case to trial for twenty-eight months—thirteen months beyond the fifteen-month triggering period for intermediate cases. *See Garza*, 2009-NMSC-038, ¶ 48. We weigh this delay moderately to heavily against the State. *See State v. Montoya*, 2015-NMCA-056, ¶ 15, 348 P.3d 1057 (weighing a total delay of twenty-seven months in a case of intermediate complexity moderately to heavily against the state).

### 2.   The Reasons for the Delay Weigh Against the State

**{19}** We next evaluate "the reason the government assigns to justify the delay[,]" which "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). There are three types of delay attributable to the state, which are weighed against the state in varying ways. *See State v. Castro*, 2017-NMSC-027, ¶ 22, 402 P.3d 688. First, deliberate attempts by the state to delay the trial to hamper the defense weigh heavily against the state. *Id.* Second, "neutral delays, including negligence or overcrowded courts that should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Id.* (alteration, internal quotation marks, and citation omitted). And third, there are "appropriate" delays for which there is "a valid reason, such as a missing witness." *Id.* (internal quotation marks and citation omitted). These are delays which are considered neutral and do not weigh against the state. *Id.* (internal quotation marks and citation omitted). Finally, delay caused by the defense weighs against the defendant. *See Serros*, 2016-NMSC-008, ¶ 29.

**{20}** We identify three periods of pretrial delay in this case: (1) from December 23, 2013, to March 30, 2015; (2) from March 30, 2015, to August 24, 2015; and (3) from August 24, 2015, to April 25, 2016. We address each time period in turn.

### December 23, 2013 to March 30, 2015

**{21}** During the first time period, the State and Defendant filed customary pleadings one expects to see filed in a criminal case. The State filed a certificate of disclosure, a demand for notice of alibi or entrapment defense, a request for disclosure, a notice of intent to call witnesses, a motion to compel pretrial interviews, an amended notice of intent to call witnesses, and timely responded to Defendant's motions to review conditions of release and for sanctions for a scheduling order violation. We agree with the district court's conclusion and the parties' concession that the case was progressing normally and weigh this period of delay neutrally. *See State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730 (weighing the delay neutrally when "the case progressed with customary promptness").

**March 30, 2015 to August 24, 2015**

**{22}**    The second time period commences with the March 30, 2015 date of Defendant's first trial setting, which was vacated for unknown reasons. Defendant's initial jury trial began on August 24, 2015. Because Defendant had no duty to bring himself to trial, *see Serros*, 2016-NMSC-008, ¶ 42, we agree with the district court that the period from March 30, 2015, to August 24, 2015, a period of approximately five months, weighs against the State.

**August 24, 2015 to April 25, 2016**

**{23}**    The third and final time period under consideration is the period between the district's court's declaration of mistrial to the date of Defendant's second trial, that is from August 24, 2015, to April 25, 2016. The district court weighed this period, approximately eight months, against the State, and the parties do not contest this conclusion. As indicated, the mistrial resulted from the State's failure to preserve and provide potentially exculpatory evidence to the defense. Again, however, it is the State's duty to bring a defendant to trial, *see id.* ¶ 38, and "[o]rdinarily the court should schedule the retrial as soon as its docket permits unless the parties justifiably require additional pre-trial discovery or motions practice." *Castro*, 2017-NMSC-027, ¶ 21.We weigh this period of delay against the State. *See Garza*, 2009-NMSC-038, ¶ 26 ("Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." (internal quotation marks and citation omitted)).

**Sum of Delay**

**{24}**    The total delay in this case was approximately twenty-eight months. Of that, we weigh fifteen months neutrally, and thirteen months against the State. While we weigh thirteen months against the State, we do not weigh them heavily because the delay was not intentional. *See id.* ¶ 26.

**3.    Assertion of the Right**

**{25}**    In analyzing whether a defendant has asserted his right to a speedy trial, we "accord weight to the frequency and force of the defendant's objections to the delay . . . [and] also analyze the defendant's actions with regard to the delay." *Id.* ¶ 32. "[P]ro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061.

**{26}**    Here, Defendant asserted his right on four occasions. First, in an entry of appearance that also included a request for discovery and demand for exculpatory evidence. Second, in a motion to compel, filed six months after his arrest. Third, in his notice of intent to claim Rule 5-602 defenses, filed almost a year after his arrest. And

fourth, in a motion to dismiss on speedy trial grounds, filed more than twenty-two months after his arrest.

**{27}** Defendant's demands were sufficient to assert his right. *See Garza*, 2009-NMSC-038, ¶ 34 (stating that a single demand is sufficient to assert the right to speedy trial). However, the first three assertions were included in pro forma pretrial motions, and Defendant did not invoke a ruling until he moved to dismiss the case almost two years after he was arrested. *See id.* ¶ 32 (evaluating a defendant's assertion of his right focuses on the frequency and force of the defendant's objections to the delay). We conclude that Defendant's assertion of his right, while not particularly vigorous, adequately asserted his right. *See State v. Gallegos*, 2016-NMCA-076, ¶ 26, 387 P.3d 296

### 4.    Prejudice to Defendant

**{28}** Preventing prejudice to those accused is "[t]he heart of the right to a speedy trial[.]" *Garza*, 2009-NMSC-038, ¶ 12. The speedy trial right is intended "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Id.* (alteration, internal quotation marks, and citation omitted). "[W]e weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Id.* "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.* Generally, "a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. "However, lengthy and onerous pretrial incarceration may render affirmative proof unnecessary to find that the defendant suffered prejudice." *Ochoa*, 2017-NMSC-031, ¶ 54. "[A] court can under certain circumstances presume that a defendant suffered some degree of prejudice even without affirmative proof." *Id.* ¶ 56. A finding of presumed prejudice, however, does not inherently tip the scales in favor of Defendant's speedy trial claim. *See id.* ¶ 50 (holding that the defendant was prejudiced as a result of extended pretrial incarceration, but noting "this presumption does not dispose of the speedy trial claim").

**{29}** On appeal, Defendant focuses on the first type of prejudice—oppressive pretrial incarceration.[1] Defendant was incarcerated for the entire twenty-eight-month period prior to his second trial. "When, as in this case, a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice." *Id.* ¶ 57. However, without a particularized

---

[1] Although Defendant argued below that the destroyed lapel recording served to establish prejudice through impairment of his defense, he fails to develop this argument on appeal, and we decline to consider it further. See State v. Fuentes, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be").

showing of prejudice, which Defendant did not provide, we do not speculate as to the impact pretrial incarceration has on a defendant or the degree of anxiety a defendants suffers. *See Garza*, 2009-NMSC-038, ¶ 35.

**Balancing**

**{30}** Upon consideration of all the *Barker* factors, we conclude that Defendant's right to a speedy trial was not violated by the delay in this case. *See Barker*, 407 U.S. at 533 (regarding none of the *Barker* factors "as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial" and, instead, providing that "they are related factors and must be considered together with such other circumstances as may be relevant").

**CONCLUSION**

**{31}** We affirm Defendant's convictions.

**{32}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JENNIFER L. ATTREP, Judge**